15854

STATE v. SIMMONS

(38 S. E. (2d), 705)

*Mr. I. A. Smoak,* of Walterboro, for appellant,

*Solicitor Julian S. Wolfe,* of Orangeburg, and *Mr. J. D. Parler,* of St. George, for respondent,

June 25, 1946.

MR. CHIEF JUSTICE BAKER delivered the unanimous Opinion of the Court.

The appellant was tried at a special term of the Court of General Sessions for Dorchester County on an indictment charging him with the murder of Rush Knight. Upon his arraignment, he entered or there was entered for him, in addition to his plea of not guilty generally, the plea of not guilty by reason of insanity. The trial resulted in a verdict of guilty, and the trial Judge sentenced the appellant in accord with the penalty provided by Statute. From such conviction and sentence the appellant has appealed upon the exceptions following:

"1. The Court erred in not granting a directed verdict of not guilty because the testimony proved conclusively that the defendant had the mind of a seven-year-old child.

"2. The Court erred in allowing the witness, Dr. McLendon, to bring out new matter in his reply testimony over the objection of counsel for the defendant.

"3. The Court erred in not granting a new trial because the defendant's mind was defective and that the defendant had the mind of a seven-year-old child."

The theory of the State was that the motive of the appellant in striking the blow that resulted in the death of Knight was robbery, but the defense was that the blow was struck in sudden heat of passion upon sufficient legal provocation, but with no intent of doing any serious bodily harm.

The appellant and the deceased lived in the same general community, the appellant being nineteen years of age, and the deceased much older, variously estimated at from twenty-seven to thirty-five or more years.

On the afternoon of the killing, the appellant and the deceased had been together at a country store where they had gone, and were returning in the general direction of the home of the deceased. While they were traveling or walking along a road described as "a little three-path road"—a wagon road that leads from the Sweatsville road to the Knightsville road—the appellant hit Knight (the deceased) in the head with a stick, which blow resulted in Knight's death. Knight was found where he had fallen when struck, and never regained consciousness. After striking the blow, the appellant took the pocketbook of Knight, and unconcernedly to all appearances proceeded in the opposite direction to that he and the deceased were walking. Although the appellant had every opportunity of doing so, he made no report to anyone of having struck the deceased, and it was not until he had been arrested and was in jail that he admitted hitting Knight with a stick. This admission was made two or three days after he was in jail. In his statement to the officers he said that they went into this woods road, which is a short cut to Knight's home; that the only reason he went with Mr. Knight was to rob him; that he picked up a piece of puncheon in the road and hit him on the side of the head with it, and that Knight fell; that he saw blood on the side of his head, and that before he left Knight, he robbed him, but found only 26 cents in the pocketbook.

When the appellant was arrested at a sawmill where he was operating a button saw that cuts off the end of the lumber, he denied striking Knight. And it is also of interest to note that the operation of this button saw requires a man with some experience. On cross examination of the arresting officer, he testified that " a child of seven" could not operate a button saw; and that he didn't "think that a boy seven years old could figure out the length and number"; that he (appellant) must have been doing his work right or they would not let him do it.

We gather from the record that the appellant was not tried at the first term of the Court of General Sessions for

Dorchester County convening following the commission of the crime, but that at such term an order was passed committing the appellant to the South Carolina State Hospital for observation as to his mental condition or mental status. He was admitted to said institution on October 16, 1945, and remained there until December 5, 1945. While there he was a patient of Dr. Sol B. McLendon, a physician and mental specialist, who has been connected with the State Hospital since 1930.

Dr. McLendon testified that he and the hospital staff reached the conclusion that the appellant, while mentally defective, was not insane, and that he knew the difference between right and wrong; that they graded him and determined that he had a mental level of a seven-year-old child. In determining this level, the normal standard of fourteen years was used, which is applicable alike to a boy of sixteen or a man of thirty-five years.

Following the appellant's confession (there is no claim that it was not freely and voluntarily made), he had no trouble in pointing out to the officers the place in the road where the deceased fell when he was struck, and the appellant also told the officers approximately the place where he had discarded the stick or piece of puncheon used to fell the deceased, and identified it when found. He also told them where he had disposed of the pocketbook which he had taken from the deceased after striking him with the stick, and there it was found. There is other testimony in the record which may support a reasonable conclusion that while the appellant was of very limited or low mentality, yet that he was capable of distinguishing right from wrong and was possessed of some craftiness.

At the conclusion of the testimony for the State, counsel for the appellant made a motion for a directed verdict of not guilty on the ground that the testimony was uncontradicted that the defendant (appellant) had the mind of a seven-year-old child. This motion was refused.

On behalf of the appellant, his father testified that the appellant had been "dumb ever since he was a child"; that this

condition had increased as he grew older, and that some days he was worse than others; that he had suffered from bad head trouble all of his life. Dr. C. W. Misservey, a practicing physician of Summerville, S. C., testified that he had treated the appellant for severe headaches in April, 1944, and had him admitted to the Dorchester County Hospital where tests were made to discover if he had syphilis; that these tests came back from the State laboratory in Columbia as positive; that basing his conclusion on this report, the appellant had syphilis, sometimes referred to as neuro-syphilis, which involves the whole nervous system. Dr. Misservey very frankly admitted that he was not an expert on judging the percentage of a person's mentality, but described the appellant as being a dumb negro, and stated it as his understanding that neuro-syphilis is responsible for eighty-five per cent. of the insanity among colored people.

The appellant's testimony has no particularly relevancy to the issues involved in this appeal, and for reasons which will appear later herein we will not comment on same.

We will first discuss briefly appellant's Exception 2. A witness for the appellant, Dr. Misservey, made the first reference in the testimony to the appellant having neuro-syphilis, and was permitted to testify (without objection) to the contents of a report from the State laboratory. The State, over the objection of the appellant, was permitted to recall Dr. McLendon to testify in reply to this new matter which had been injected into the case, not by the State but by the appellant. It may be noted in passing that Dr. McLendon placed the percentage of colored male patients received at the South Carolina State Hospital who have neuro-syphilis at 20 per cent.

The admission of testimony in reply is a matter largely in the discretion of the trial Judge, and his ruling thereabout will not be disturbed except for abuse of this discretion. In this case the testimony objected to was in direct reply, and obviously admissible.

The exceptions dealing with the refusal of the trial Judge to grant a direction of verdict of not guilty and to grant a

new trial are overruled. It was for the jury to decide, under appropriate instructions from the trial Judge, whether the appellant had the mental capacity to commit the crime, and whether the defense of insanity and/or that of self-defense had been established by a preponderance of the testimony.

In a capital case, however, the Court is conscious of its duty to search the record *in favorem vitae,* and to give the defendant the benefit of any errors in the conduct of the trial which affect the merits of the cause, even though they may not be sufficiently covered by the exceptions.

In charging the law applicable to the appellant's plea of insanity, the trial Judge told the jury that in order for such plea to avail, "one must show that he was in such a mental condition by reason of a mental disease, that at the time of the act, * * * he did not know that the act committed was wrong or criminal or punishable either one or the other." In the light of some of the testimony in this case the jury may have understood that the appellant's insanity had to be confined to *mental disease* rather than to a general mental incapacity.

Again in charging the law of self-defense the Court correctly charged the jury: "If you find from the evidence that the defendant has made out his plea of self-defense he is entitled to a verdict at your hands, a verdict of not guilty. If you have a reasonable doubt as to whether or not he has made out his plea of self-defense he is entitled to the benefit of such a reasonable doubt." Immediately following this, however, the trial Judge charged as follows: "On the contrary if you find from the testimony that the defendant has not established all of the elements of self-defense, if there is a reasonable doubt on that in your minds, why then he would have failed to establish his plea of self-defense."

The last quoted portion of the charge was erroneous. If there was merely a reasonable doubt in the minds of the jury whether the appellant had established all of the elements of self-defense, the appellant was entitled to the benefit of such reasonable doubt.

This case was conducted by the trial Judge with such conspicuous ability and with such outstanding regard for the rights of the appellant that if this were other than a capital case, we would be strongly disposed to question whether the error above pointed out should be regarded as reversible; and especially so since the matter was not called to the Court's attention by counsel either for the State or the appellant. But in view of the status of the appellant and of the capital nature of the case, we feel that we should not speculate as to the question whether a specific instruction of the character above pointed out would have affected the result before the jury.

The foregoing may superficially appear to be shadowy, but after mature deliberation, we are convinced that it involves substantial rights of the appellant and should be noticed by this Court.

For the reason above stated, the judgment is reversed, and the case remanded for a new trial.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.