19191

The STATE, Respondent, v. Trenton T. TILLMAN, Sr., Trenton T. Tillman, Jr., and Julius Reid, Appellants

(180 S. E. (2d) 209)

*Messrs. James A. Stuckey, Jr.,* and *deRosset Myers,* of Charleston, *for Appellants,*

*Messrs. Robert B. Wallace, Esq., Solicitor,* and *A. Arthur Rosenblum, Esq., Asst. Sol.,* of Charleston, *for Respondent,*

March 24, 1971.

LITTLEJOHN, Justice.

The appellants, Trenton Tillman, Sr., Trenton Tillman, Jr. and Julius Reid, were charged with grand larceny and were convicted in the Court of General Sessions in Charleston in January, 1970. We affirm.

On this appeal the appellants present three basic issues as grounds for a new trial. First, it is contended that a continuance should have been granted; secondly, that a severance for the purpose of trials should have been ordered; and thirdly, that the trial judge erred in refusing to call police Sergeant Riccio as the court's witness, and after having failed to so call him, erred in refusing to declare him hostile so that appellants could cross examine.

During the month of June, 1969, the City of Charleston was embroiled in a dispute involving striking workers of the Medical College of South Carolina; a state of emergency had been declared, the National Guard mobilized, and a curfew invoked.

In the early morning of June 26, while the curfew was in effect, a store owned by Arnold Prystosky, known as the Father & Son Store, was broken into and items stolen therefrom. Entrance had been made by breaking out the glass of the front display window. Mr. Prystosky was summoned and upon his arrival he found city policemen, and in addition, Trenton Tillman, Jr. and Julius Reid. Tillman, Jr. and Reid were there ostensibly for the purpose of investigating an alleged breaking at a store next door.

Tillman, Jr. and Reid were both employees of the Charleston Guard Service. This guard service, available to merchants, was owned by the defendant, Tillman, Sr., who was formerly chief of police for the city of Charleston. Mr. Prystosky phoned Tillman, Sr. and arranged for the Guard Service to protect the store until the next morning.

At approximately 4 o'clock the same morning, police Privates Gause, Dunkle and Gillespie, on routine patrol for the city, drove past the store and observed that the guard previously assigned to the sidewalk area in front of Mr. Prystosky's store was absent; a station wagon was parked outside. Being suspicious, they proceeded to a vantage point north of the store and viewed the scene through high-powered binoculars. They radioed Sgt. Riccio, their superior, and he joined them.

The officers testified that they saw Tillman, Jr. carrying clothes out of the store and loading them into the station wagon in the presence of Tillman, Sr. and Reid. Tillman, Jr. drove the station wagon from the store area. The officers pursued him and stopped the vehicle within a few blocks of the store. They arrested him after finding shoes, belts, shirts and socks in the car. They then went back to the store and arrested Tillman, Sr. Reid had left, but was found and arrested the next morning.

Sgt. Riccio was the senior officer present when Tillman, Jr. was arrested. He testifed at a preliminary hearing. He was not called as a State's witness in the trial. The judge refused to call him as the court's witness; the defense then called him to testify.

Since Tillman, Sr. had recently served as chief of police, the incident and charges which grew out of it, brought about more than usual publicity in the Charleston morning and afternoon newspapers. In addition to the news stories there was one item published by Ashley Cooper more as a commentary and/or editorial than as news.

The case was not called for trial in either the September or December terms of General Sessions Court. It was called for trial on the second Monday of January. On Tuesday, January 13, counsel moved before the presiding judge for a continuance on the ground that the defendants could not obtain a fair trial at that time because of excessive adverse publicity in the news media, including the newspapers, TV and

radio stations. In substantiation of the motion news stories and pictures on June 26, June 27, August 1, August 2, September 4, September 11 and December 31, 1969, and January 1, January 6, and January 12, 1970, were entered in the record. In addition, the Ashley Cooper columnist-type article of June 29 was presented to the court. There was also made a part of the record a newspaper story dated February 10, 1968, relative to a report that Tillman, Sr. was connected with an altercation in a Columbia night club, and a story dated June 28, 1968, which indicated that Tillman, Sr. had filled his swimming pool with water from a city fire hydrant. The article dated August 2, 1969 was a news story reciting that Tillman, Sr. was charged with assault and battery of a high and aggravated nature in an incident not connected with the grand larceny charge. The TV and radio coverage is referred to as being extensive, but is not detailed.

A change of venue was not sought. The gravamen of counsel's argument in the lower court was that the trial should be postponed until the effects of the publicity subsided. Motions for a continuance are addressed to the discretion of the trial judge. We have recently ruled that a new trial will not be granted for failure to continue a case unless there is both an abuse of discretion and resulting prejudice. *State v. Hinson,* 253 S. C. 607, 172 S. E. (2d) 548 (1970). In ruling upon a motion for a continuance the trial judge should consider the nature, amount and probable effect of such pre-trial publicity. If there is a reasonable likelihood that prejudicial publicity prior to trial will prevent a fair trial, it becomes the duty of the judge to continue the case until the threat abates.

We have reviewed all of the showing made before the trial judge and we cannot say that he abused his discretion. When a person of prominence is charged with a felony it is inescapable that more than the usual amount of publicity will be given to the case. The newspaper articles on which the motion was based were neither accusatory nor over-

played. On the other hand, the reporting was factual. We agree that the columnist-type article printed June 29, 1969 by Ashley Cooper was critical of Tillman, Sr. It recapped some of the former chief's difficulties. At the same time, we are sure the trial judge must have taken into consideration the fact that the printing of this article was more than six months previous.

In an effort to assure an impartial jury, the trial judge conducted an extensive questioning on *voir dire* of each member of the jury who was called. Assuming, without so deciding, that the publicity was prejudicial, we cannot say that the trial judge should have postponed the case longer.

Counsel next contends that the trial judge erred in failing to grant separate trials because one defendant was a public figure and all defendants were represented by the same attorneys. It is argued that the trial judge should have concluded that the defenses were antagonistic. A review of the record reveals that the conflict of interest did not develop in the trial of the case. The defenses were not inconsistent such as to warrant separate trials. The fact that one of the defendants had held public office and served as chief of police did not create a situation which denied to the others a fair trial.

We have the advantage of determining, in the light of the whole record, whether the defendants were prejudiced by failure of the judge to grant separate trials. The motion was addressed to the sound discretion of the trial judge and we unhesitatingly hold that he did not abuse that discretion. See *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669 (1960) and *State v. Prather,* 251 S. C. 608, 164 S. E. (2d) 756 (1968).

Finally, appellants urge that a new trial should be granted because the trial judge refused to call Sgt. Riccio as the court's witness so that defense counsel could cross examine him as a hostile witness. As indicated above, at the trial the State did not call Sgt. Riccio as a

witness. At the preliminary hearing the prosecuting attorney did not ask Sgt. Riccio to testify; at the request of defense counsel, the magistrate before whom the preliminary hearing was held, called him as the court's witness and permitted defense counsel to examine him and cross examine him. It is the argument of appellants' counsel that they were taken by surprise because the State did not call Sgt. Riccio to testify. After the trial judge refused to call him as a witness of the court, defense counsel elected to have him go on the stand as a defense witness.

On cross examination he gave testimony adverse to the defendants and inconsistent with the testimony he had given at the preliminary hearing. The defendants made substantial capital of the inconsistency. After this inconsistent testimony developed, the judge permitted defense counsel who called him, to cross examine him "as to this differential between his previous testimony and his testimony now." Thereupon the witness was cross examined, using the inconsistent transcribed testimony taken at the preliminary hearing. There was no obligation on the part of the State to call him as a witness. See *State v. Hill,* 254 S. C. 321, 175 S. E. (2d) 227 (1970).

In *Elletson v. Dixie Home Stores,* 231 S. C. 565, 99 S. E. (2d) 384 (1957) we held:

"The Court may of its own motion call a witness and examine same even out of order. It is a matter within the discretion of the trial Judge, * * *"

We are of the opinion that the trial judge did not abuse his discretion in refusing to call Sgt. Riccio as a witness of the court. After it appeared that his testimony was inconsistent with the preliminary hearing the judge was certainly more than fair in permitting cross examination to the extent of the inconsistency.

All exceptions are found to be without merit, and the judgment of the lower court is

Affirmed.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Bussey, J., not participating.