## 19018

The STATE, Respondent, v. Walker G. HINSON, Appellant.

(172 S. E. (2d) 548)

*Messrs. David Lyle, Cleve A. Lytle, William C. Spencer, and S. Michael Camp,* all of Rock Hill, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Joseph C. Coleman, Assistant Attorney General,* of Columbia, and *Mike S. Jolly, Solicitor,* of Union, *for Respondent,*

February 19, 1970.

BUSSEY, Justice.

The defendant-appellant, under an indictment charging him with assault and battery with intent to kill and murder one Audrey Bodiford, was convicted by a jury at the September 1968 term of the Court of General Sessions for York County of assault and battery of a high and aggravated nature and appeals from his conviction and resulting sentence. At the outset, we think it important to a discussion of several questions raised on the appeal to first note a prime distinction between assault and battery of a high and aggravated nature and assault and battery with intent to kill. Assault and battery with intent to kill is an unlawful act of violent nature to the person of another with malice aforethought, either express or implied. Malice is not an ingredient of the offense of assault and battery of a high and aggravated nature. Under any view of the evidence in the case, there were only three verdicts which the jury could have returned. Guilty as charged; guilty of assault and battery of a high and aggravated nature; and not guilty, based solely on appellant's plea of insanity. The verdict shows that the jury rejected his plea of insanity but absolved him of malice.

The appellant operated a grocery store in the vicinity of Rock Hill, South Carolina. On the afternoon of Sunday, March 31, 1968, Bodiford, an agent of the Alcoholic Beverage Control Board, and three other agents, including one Garnett E. Dabney, repaired to the appellant's grocery store and charged appellant with the sale or delivery of beer on Sunday, in violation of Section 4-204.1 of the South Carolina Code. While the agents were engaged in confiscating and removing appellant's stock of beer under the authority of said Code Section, the appellant took a revolver from near his cash register and emptied it in the direction of the agents, killing agent Dabney and wounding agent Bodiford. There is conflict in the evidence as to the con-

versation which took place between the agents and appellant, but a discussion of these conflicts is not essential to a determination of the appeal. Suffice it to say that there was evidence adduced on behalf of the State which would have fully supported a conviction of assault and battery with intent to kill. All evidence favorable to the defendant, other than on the issue of insanity, was simply addressed to mitigating the offense to that of assault and battery of a high and aggravated nature.

Appellant contends that there was error in denying his motion for a continuance based on alleged prejudical newspaper publicity. It appears that the trial was commenced on September 30th, and that on the preceding September 19th there was published in the Evening Herald an article about the pending trial which contained the following language :

"According to York County Sheriff Grover Noe, the four agents, none armed, were making an inventory on the beer prior to confiscating it when the two were shot."

What, if anything, Sheriff Noe knew about the case, or whether he, in fact, made the statement attributed to him are questions which the record does not answer.

It is too well established to need the citation of any authority that the decision of the trial judge on a motion for continuance based on pretrial publicity will not be disturbed in the absence of abuse of discretion and resulting prejudice to the defendant. We see nothing inflammatory in the statement attributed to Sheriff Noe and, moreover, the statement that the agents were unarmed is nowhere contradicted in the record. There is evidence that contrary to the publicized statement, the shooting occurred while the beer was being removed from the store, rather than in the course of the inventory thereof, but none of the statements attribued to Sheriff Noe could have possibly had any effect on the trial of the case, unless remotely bearing on the issue of the absence or presence of malice, and the jury exonerated the appellant of malice. We conclude

that there was no abuse of discretion in denying the motion for a continuance and most clearly no prejudice to appellant.

In addition to the indictment upon which he was tried, there is pending an indictment against appellant for the murder of agent Dabney. Upon the call of the instant case for trial, appellant moved that the State be required to first proceed with the trial on the murder indictment, and that failing such motion, the two cases be tried together. Such motion was denied and the appellant asserts prejudicial error.

While no case precisely in point factually has been cited or come to our attention, the case most nearly in point is that of *State v. Evans,* 112 S. C. 43, 99 S. E. 751 (1919), from which we quote,

"The defendants were indicted for the murder of Sidney Bailey. They were also indicted for the murder of Edgar Bailey. Before they were arraigned, their attorneys made a motion to join the indictments, on the ground that they arose out of one and the same difficulty, and that the deaths of Edgar Bailey and Sidney Bailey were the result of one and the same impulse. The motion was overruled, and this presents the first assignment of error. It is only necessary to cite the following cases to show that such motions are addressed to the discretion of the presiding judge: *State v. Carroll,* 30 S. C. 85, 8 S. E. 433, 14 Am. St. Rep. 883; *State v. Wade,* 95 S. C. 387, 79 S. E. 106; *State v. Brown,* 108 S. C. 490, 95 S. E. 61."

In view of the foregoing, it would seem the motion here was addressed to the discretion of the presiding judge and that his exercise of such discretion should not be disturbed in the absence of a showing of abuse of that discretion, with resulting prejudice to the appellant. While the appellant variously argues this question and contends that there was an abuse of discretion with resulting prejudice, he does not show wherein the trial judge's discretion was abused or wherein he was prejudiced. He argues, *inter alia,* that he

was prejudiced in that of necessity some evidence relating to the murder charge came out in the trial of the instant case. It is unnecessary for us to consider or determine what the situation might have been had appellant been convicted of assault and battery with intent to kill, involving a finding of malice aforethought. The jury absolved the appellant of malice, which clearly shows, under the facts of this case, that the jury was not influenced in the slightest degree by any evidence bearing upon the murder charge.

For the same reason, the next contention of the appellant is without merit. There was evidence to the effect that shortly after the shooting and while agent Dabney was lying fatally wounded on the ground, the appellant reloaded his pistol and prevented a fellow agent from rendering assistance to Dabney. In the course of the argument of the solicitor he summarized the evidence in this respect and there was objection by appellant's counsel. Upon objection, the court admonished the solicitor in the following language: "Not any detailed references, Solicitor."

The record does not reflect the precise words of the solicitor and there was neither a motion for a mistrial nor a request for any specific instructions from the court. Such alone should be dispositive of this contention but, additionally, the evidence referred to by the solicitor was a part of the *res gestae,* and the conduct of the appellant commented upon by the solicitor was relevant on the issue of the presence or absence of malice in the heart of the appellant. The appellant having been absolved of malice, it clearly follows in this case that the argument was not prejudicial to him.

The remaining questions are all related to appellant's plea of insanity. On April 8th, following the shooting, appellant was committed to the State Hospital for a thirty day period of examination pursuant to the appropriate statute. A team of doctors there concluded that he was sane and there was no indication of any recent mental illness on his part. A psychiatrist, Dr. Fisher, from Charlotte, North Carolina,

employed by the appellant, gave it as his positive opinion that appellant was insane. Lay evidence tending to prove his insanity was also offered. Appellant contends that the preponderance of the evidence established that he was insane at the time of the alleged offense and that there was no evidence whatsoever that the appellant was sane at the particular time, and that, accordingly, the court should have granted his motion to set aside the verdict of the jury.

The record does not reflect that any motion for a directed verdict was made on the ground of insufficient evidence in the course of the trial, and, under Circuit Court Rule 76, the post-trial motion was clearly not timely. It is, however, apparently well recognized that this court has the power to waive the failure to comply with Rule 76, in a criminal case, and on occassion has done so. See *State v. Miller,* 223 S. C. 128, 74 S. E. (2d) 582 (1953).

There is no doubt that compliance with the said rule should be waived if such waiver is essential to the prevention of a clear miscarriage of justice. Additionally, it may be that such should be waived in cases where there is grave doubt as to the sufficiency of the evidence to warrant the submission of a criminal case to the jury. If non-complinace with the rule be waived, the following principle of law is applicable.

"It is well settled that on appeal from a refusal to direct a verdict of not guilty, the evidence and inferences that may be reasonably drawn therefrom have to be viewed in the light most favorable to the State, and if there is any competent evidence supporting the verdict, such will not be set aside. See cases collected in West's South Carolina Digest, Criminal Law, Key Nos. 1144(13) and 1159." *State v. Jenkins,* 249 S. C. 570, 155 S. E. (2d) 624 (1967).

The evidence in this case and the inferences reasonably deducible therefrom have to be veiwed in the light of the foregoing principles. Appellant's argument on this question is predicated upon the following, which

occurred in the course of cross-examination of Dr. Phinizy, a doctor from the State Hospital and a witness for the State.

"Q. In rendering your opinion you have made an opinion that Walker Hinson was sane?

"A. Correct, yes, sir.

"Q. What was his condition on March 31st?

"A. What was his condition?

"Q. Yes.

"A. March 31st?

"Q. Yes.

"A. I didn't know Mr. Hinson then.

"Q. You don't know whether he was sane or not do you?

"A. I can only judge by what I saw during the periods of time that I saw him.

"Q. So sometime around 4:30 or quarter 'til five on March 31st, 1968 you have no opinion?

"A. I can give no opinion, only an opinion by what I saw while I saw him."

Appellant interprets the foregoing as an unequivocal statement on the part of Dr. Phinizy to the effect that he had no opinion whatever as to the sanity or insanity of the appellant at the time of the shooting. In the light, however, of the remaining testimony of this doctor, we do not so interpret it. The doctor did not see appellant until about a week after the shooting and the quoted testimony is clearly susceptible of the inference that he was simply explaining that his opinion as to the sanity of the appellant at the time of the shooting was of necessity based, not on his observation of the appellant at the particular time, but on his observation and examination of him thereafter. Immediately following the above quoted cross-examination, the following question and answer occurred,

"Q. Doctor, is there anything in your findings that would indicate to you any fairly recent mental illness of any kind?

"A. No, sir."

This doctor had previously testified in detail as to the examination and findings of sanity by the team of three physicians, of which he was one, including the following,

"A. We unanimously, the three physicians, who saw this man were of the opinion he was not insane.

"Q. Did you find any mental or emotional abnormality?

"A. No, sir."

While the State offered no evidence directly addressed to the proof of the sanity of appellant, other than that of Dr. Phinizy, there was other evidence in the record from which, viewed in the light most favorable to the State, the jury could have reasonably drawn the inference that the appellant was, in fact, sane at the time of the shooting. The agents, one or more, were in and about appellant's place of business for a period of two or more hours. There were extended conversations with the appellant about the inventory; whether or not he would put up bond; and whether or not charges would be preferred against him before the Board or before a magistrate. In the course of discussions, appellant on two different occasions sought to reach his attorney by telephone and discussed either with his attorney, or the wife of his attorney, what his rights were and how he should proceed. We conclude without more that there was abundant compentent evidence to warrant the submission of the case to the jury and to support the verdict which it rendered, and that a motion for a directed verdict should have been denied, even if timely made.

The appellant contends that the trial court unduly restricted his cross-examination of one Keel, a witness for the State, and in that connection erroneously ruled that a layman was not qualified to express an opinion as to the sanity or insanity of the appellant. The record does not reflect that his Honor so ruled. Keel was present at appellant's place of business at the time of the shooting and had testified on direct examination as to the sequence of events which he observed. On cross-examination, this wit-

ness was examined and allowed to testify fully as to everything he observed with respect to the appearance, demeanor, 'state of mind, etc. of the appellant at the time. Appellant's counsel then asked the witness whether he thought or believed that the appellant "knew what he was doing". There was then objection to the form of that question, and a colloquy, not all of which is contained in the record, took place at the bench between the judge and counsel. The judge then sustained the objection but pointed out that the objection was to the form of the question and ruled, *inter alia,* "I certainly would permit a question as to whether he was in normal control." The witness was then asked whether in his opinion, in the light of his knowledge of the appellant and his observation of him at that time, the appellant was in normal control or in his right mind. The solicitor again objected and the court overruled the objection stating that he was doing so on the authority of *State v. Cain,* 246 S. C. 536, 144 S. E. (2d) 905. The witness then replied as follows,

"A. * * * In the few years that I have know him and the state he was then in, highly emotional, and it appears to me irrational state, I've never seen him like that before in my life.

"Q. Irrational state?

"A. I've never seen him like that before."

The issue of appellant's mental condition was not further pursued with this witness. Counsel never sought to ask the witness whether in his opinion the appellant was insane, of unsound mind, or whether he was mentally capable of knowing right from wrong. We are not convinced that there was any erroneous ruling on the part of the trial judge resulting in any prejudice to the appellant. Cf. *State v. Keller,* 224 S. C. 257, 78 S. E. (2d) 373 (1953).

Dr. Phinizy was the only expert witness offered by the State as to the sanity of the appellant and he testified only in reply. The appellant objected to his being offered as a

reply witness, taking the position that the issue of appellant's contended insanity had been raised in the cross examination of the witness Keel, hereinabove referred to, and that once the issue was raised, the testimony of Dr. Phinizy should have been offered as evidence in chief rather than in reply; and that allowing Dr. Phinizy to testify in reply placed undue emphasis upon his testimony to the prejudice of the appellant.

Just what evidence is admissible in reply in a given case, as opposed to being offered as a part of the evidence in chief, is a question which of necessity has to rest largely in the sound discretion of the trial judge. See cases collected in West's South Carolina Digest, Criminal Law, Key No. 683. In the instant case the State in its case in chief, obviously relying on the presumption of sanity of the appellant, made no effort to offer any evidence tending to prove his sanity. The appellant in cross examination of the witness Keel sought to elicit evidence from which it might be reasonably inferred that the appellant was, in fact, insane at the time of the commission of the crime.

Since the admission of reply testimony is largely within the discretion of the trial judge, we shall not attempt to closely analyze the testimony elicited from the witness Keel, but it is at least questionable whether such was sufficient to do any more than suggest the possibility that appellant was mentally incapable of knowing that what he did was morally and legally wrong.

In the case of *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73 (1958), a confession of the defendant offered in evidence concluded with a suggestion that the crime had been committed when the defendant was temporarily insane. The testimony of a Dr. Eaddy from the State Hospital was objected to, *inter alia,* on the ground that the State had no right to contradict the defendant's confession which it had put in evidence. With respect to such objection this court had the following to say,

"There is, in every criminal case, the presumption of the defendant's sanity. The State may rely upon that presumption or, if contention of insanity is suggested, (as by the concluding words of the confession here), it may present testimony in anticipation of such contention."

Here, there being at least a suggestion of insanity from the testimony elicited upon cross examination of the witness Keel, the State could have presented testimony in anticipation of such contention on the part of the appellant, but we do not think it was required to do so.

It is well settled in this State that insanity is an affirmative defense in a criminal prosecution and that, in order to make out such defense, sufficient proof of insanity must be shown, by a preponderance of the evidence, to overcome in the first place the presumption of sanity and any other proof of sanity that may be offered. *State v. Paulk,* 18 S. C. 514 (1883) ; *State v. Bundy,* 24 S. C. 439 (1887), and other decisions too numerous to cite. There seems to be a clear split of authority in other jurisdictions as to whether the presumption of sanity has any evidentiary value once evidence is introduced tending to prove insanity. See 17 A. L. R. (3d) 146, *et seq.,* Sections 8 and 9. Also, 5 A. L. R. (3d) 19, *et seq.,* Section 20. The opinions in the oft cited cases of *State v. Paulk* and *State v. Bundy, supra,* would seem to indicate that South Carolina is committed to the view that the presumption of sanity does retain evidentiary value even after the offer of evidence tending to prove insanity. We, however, refrain from specifically deciding this question and did not deal therewith in passing upon the contention that appellant was entitled to a directed verdict since there was, in our view, sufficient evidence of sanity without resort to the presumption of sanity.

Even if we assume, without at all deciding, that the evidence elicited from the witness Keel on cross examination was sufficient to overcome the presumption of sanity, the fact remains that the bulk of the evidence

tending to support appellant's affirmative defense of insanity was offered in the presentation of his case, an we conclude that the court properly permitted Dr. Phinizy to testify in reply thereto, and that, accordingly, there was no abuse of discretion. Cf. *State v. Simmons,* 208 S. C. 538, 38 S. E. (2d) 705 (1946).

All exceptions of the appellant being in our view without merit, the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.