20222

The STATE, Respondent, v. Garvin COLLINS, Appellant.

(225 S. E. (2d) 189)

*Messrs. Carter, Philpot, Johnson & Smith,* of Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker, Asst. Atty. Gen.,* and *Robert N. Wells, Jr., Staff Atty.,* of Columbia, and *Claude A. Taylor, Jr., Cty. Sol.,* of Spartanburg, *for Respondent,*

*Messrs. Carter, Philpot, Johnson & Smith,* of Greenville, *for Appellant,* in Reply.

May 25, 1976.

*Per Curiam:*

The defendant, Garvin Collins, and Albert Couch were charged with armed robbery of a Community Cash Store in the town of Inman. Couch pled guilty. The defendant was tried by a jury, found guilty and sentenced to fifteen years in prison.

Defendant has appealed, raising a number of questions. We think his contentions, alleging error in the trial judge's instructions to the jury, require reversal and entitled him to a new trial.

The evidence in the case reveals that the defendant and Couch lived in Greenville; they had been drinking heavily on the day of the robbery. They rode around for some time in the defendant's car, with Couch driving.

After entering a plea of guilty and before sentence was imposed, Couch testified for the State. He said that he placed a sawed-off shotgun, a ski mask and a pair of gloves in the defendant's car, and the two of them drove around for several hours, while continuing to drink, and ended up in Inman. He stated that they did not talk specifically of a

robbery, but each indicated to the other that he was in need of money. In Inman, the car quit running about one and one-half blocks from the Community Cash Store.

Couch testified that he told the defendant that he thought he would "get that one," meaning the store, and defendant reportedly said, "Let's go if we going to do it." However, Couch told the defendant, "no, you go back to the car and wait for me." Couch then proceeded to rob the store, which took about 25 minutes. In the meantime, the defendant either went back to the car and left it again, or strayed off to a point about two blocks from the Community Cash Store in a direction different from the car. At this place (about two blocks from the store), the defendant was arrested and jailed by a city policeman for public drunkenness. The robbery consumed an unusual period of time because the manager of the store wasn't there and Couch awaited his arrival. The intoxicated condition of Couch is emphasized by the fact that he not only demanded money but robbed the store of two loaves of bread "for breakfast."

By the time Couch returned to the car, the defendant was in jail; Couch hid the money and bread in the bushes and was arrested in the vicinity thereafter, having been identified as the robbery suspect.

A detective, testifying for the State, said that he questioned the defendant in his cell about an hour after his arrest. The defendant was not asked to sign a written waiver of *Miranda* rights on a form oftentimes used, but the detective testified that he orally advised him of his rights and determined, by means of a field sobriety test, that defendant was capable of and did understand his rights before questions were asked. After a few preliminary questions, the defendant said, "I didn't know Albert was going to rob that store when he got out of the car with the shotgun": No further questions were asked. The policeman who arrested the defendant stated that, in his opinion, defendant

was still intoxicated when he left the Inman jail after being questioned.

The defendant did not testify. His defense consisted primarily of witnesses (family members of the defendant and cellmates of Couch) who testified that witness Couch, prior to trial, had told them that the defendant was not involved in the robbery and that he (Couch) had made a deal for leniency in return for testifying for the State. Couch denied making such deal.

Defendant's first contention is that he was entitled to a directed verdict because the State's evidence was insufficient to support a conviction of armed robbery. Accessory before the fact of armed robbery was not charged.

■ Upon a review of the whole of the evidence, we conclude that when it is considered in the light most favorable to the State, as it must be, it is sufficient to give rise to a jury question as to whether defendant was a principal to the crime of armed robbery. Inasmuch as a new trial is to be held, we decline further comment upon the evidence.

Allegations of error raised by the defendant, which require a reversal, concern the charge of the law by the judge to the jury.

■ Counsel for the defendant requested, in writing, the judge to charge the jury as follows:

"Prior knowledge that a crime is going to be committed, without more, is not sufficient to make a person guilty of that crime."

The record reflects that the judge agreed to grant the request. Thereafter, counsel for the defendant stated to the jury that the judge would charge them accordingly, and the theme of the entire argument (which is before us) is that the defendant knew that the robbery was to take place

but did not participate in it because Couch had told him, in effect, that he didn't want him to participate in it and to return to the car.

At the close of the judge's charge, counsel for the defendant called to his attention the fact that he had overlooked this charge. The request to pursue the matter further was refused.

We are of the opinion that the request stated a sound proposition of law and that the same was warranted by the evidence which had been submitted to the jury. The evidence was susceptible of more than one reasonable inference, and one of the inferences was that the defendant knew the robbery was to take place but did not aid in it. Failure to grant the request was prejudicial error.

The court also refused to instruct the jury on the distinction between an accessory before the fact (with which the defendant was not charged) and a principal to a felony. We think the defendant was entitled to have the jury apprised of this distinction and instructed that he may not be found guilty of accessory when he was only indicted for being a principal. *State v. Sheriff,* 118 S. C. 327, 110 S. E. 807 (1921).

We agree with defendant's argument that the evidence created a close question as to whether he might more properly have been charged as an accessory than as a principal. Lacking a meaningful instruction to distinguish the two crimes, the jury may conceivably have assessed criminal liability erroneously.

The next allegation of error challenges the sufficiency of the judge's charge as to when an accused person may be considered a principal to a crime. That charge was as follows:

"I charge you further that where several are engaged in a robbery it is not necessary that the several confederates

should be actually present when the property is taken. And where two or more are associated together to commit a robbery and only one person perpetrates the act, all are guilty."

In general terms, the above charge is correct and under a different factual setting we might hold it sufficient. Here, however, we think the defendant was entitled to a fuller charge, setting forth in detail the necessary elements to warrant a conviction as a principal. The following language from *State v. Gilbert*, 107 S. C. 443, 93 S. E. 125 (1917), more clearly sets out the law:

"If several persons in pursuance of a common design to commit an unlawful act . . . set out together . . . and each takes the part agreed upon or assigned to him, some to commit the act, others to watch at proper distances and stations to prevent interference or surprise or to encourage this commission of the unlawful act or to favor, if necessary, the escape of those immediately engaged in the commission of the unlawful act, under these circumstances, if the unlawful act is committed, the act of one is the act of all and all are presumed to be present and guilty."

The failure of the court to give the charge was particularly prejudicial in the light of its refusal to instruct the jury on the distinction between accessory and principal to the commission of a felony.

We now consider the remaining allegations of error raised by the defendant, none of which involve reversible error.

The defendant complains that his statement to the detective should not have been admitted, since the court erred in its determination that it was voluntary and there was no finding that he had waived his constitutional rights before making it. The contention that the statement was not voluntary is based on the assertion that he was intoxicated at the time of the questioning and incapable of understanding his rights. Proof of accused's in-

toxication, short of rendering him unconscious of what he is saying, does not require, in every case, that statements he made while in that condition be excluded from evidence. *State v. Saxon,* 261 S. C. 523, 201 S. E. (2d) 114 (1973). The evidence, including the condition of the defendant presented a factual situation which the judge determined unfavorably to the defendant. We cannot say that he erred.

Defendant's next contention is that the trial judge erred in refusing to charge that the testimony of a codefendant should be carefully scrutinized and that the jury may consider whether the witness is fearful of retribution or has any hope of leniency from the prosecution. We think the trial judge's overall instruction that it was the jury's duty to pass upon the credibility of the testimony of witnesses, and that they could reject any part of the testimony if they found reason for doing so, was adequate. *State v. Steadman,* 257 S. C. 528, 186 S. E. (2d) 712 (1972). Any further instruction on this point might have invaded the province of the jury to draw inferences from the evidence.

The allegation that the court erred in failing to require the State to open on its theory of law, as permitted by Circuit Court Rule 58, and the allegation that the judge erred in failing to charge the jury to consider the voluntariness of defendant's statement, involve matters that can be avoided upon a new trial. And inasmuch as a new trial will be held on other grounds, we think it unnecessary to discuss these issues.

The contention that the judge erred in failing to adopt defendant's proposed statement of the case is without merit. Such was within the discretion of the trial judge.

Reversed and remanded for a new trial.