1910

The STATE, Respondent v. Beondi Clifford PACE, Appellant.

(425 S.E. (2d) 764)

Court of Appeals

*Chief Atty. Daniel T. Stacey,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Rakale B. Smith,* Columbia, and *Sol. Charles Molony Condon,* North Charleston, *for respondent.*

Heard Oct. 12, 1992; Decided Dec. 7, 1992.

Reh. Den. Jan. 28, 1993.

*Per Curiam:*

This is a criminal case in which the appellant was convicted of grand larceny. He seeks a new trial based upon the failure of the court to give requested jury charges and comments made by the trial judge regarding his counsel. We affirm.

The case involves the theft of shoes from a sporting goods store. The appellant entered the store shortly after opening and asked to use the restroom. The store clerk showed him the restroom in the back storeroom and observed the appellant while he was in the store. The clerk testified the appellant's actions seemed suspicious because he kept looking around and left quickly after exiting the restroom.

Shortly after noon, the store manager and the clerk discovered a box containing tennis shoes was missing from the back storeroom. They checked the outside trash dumpster and discovered empty shoe boxes. The outside door to the back storeroom was unlocked and the alarm system was inoperative. The clerk gave a description of the appellant to the police.

At approximately two o'clock in the afternoon, the investigation officer saw the appellant sitting at a bus stop with a large sack at his feet. The appellant fit the physical description given by the clerk, including his clothes. The sack contained tennis shoes. Upon questioning, the appellant told the officer the sack was at the bus stop when he arrived. However, another man at the scene said the appellant had arrived carrying the sack and indicated it contained tennis shoes. The clerk was brought to the bus stop and identified the appellant as the man in the store that morning.

The appellant was charged with grand larceny. He interposed an alibi defense claiming he was working at a nearby hotel that morning. During the trial, the judge made a comment to the jury about the conduct of appellant's counsel. The judge also refused a defense request to define accessory after the fact and receiving stolen goods to the jury. These matters form the basis for this appeal.

## I.

The trial judge charged the jury concerning grand larceny and alibi. He refused the defense request to explain the crimes of accessory after the fact and receiving stolen goods. Appellant requested these charges under the authority of

*State v. Collins*, 266 S.C. 566, 225 S.E. (2d) 189 (1976). We find no error.

In *State V. Collins*, the Supreme Court found error in the trial court's refusal to instruct the jury on the distinction between accessory before the fact and a principal to a felony. The defendant in an armed robbery case was not charged as an accessory but the court found "the evidence created a close question as to whether he might more properly have been charged as an accessory than as a principal." *Id.* at 571, 225 S.E. (2d) at 192. The court distinguished *State v. Collins* in *State v. Gates*, 269 S.C. 557, 238 S.E. (2d) 680 (1977). In that armed robbery case, the supreme court found no error in the trial court's failure to give further charges concerning the actions of two people committing a crime. The court held the evidence was distinguishable from the scenario in *Collins*. *Id.* at 561, 238 S.E. (2d) at 681, 682.

Appellant contends the evidence presented by the State could lead to a conclusion he was guilty of being an accessory after the fact or of receiving stolen goods rather than grand larceny. He relies heavily on the fact no witness saw him take the shoes from the store. Since he was only charged with grand larceny, he argues the jury should have been instructed about these other crimes so as to preclude a conviction of grand larceny under an improper theory.

The appellant took no exception to the charge on grand larceny. As part of the charge, the judge told the jury the State had to prove every element of the offense beyond a reasonable doubt including the elements of taking and carrying away the property of another. He also charged the jury about direct and circumstantial evidence. Contrary to the evidence presented in both the *Collins* and *Gates* cases, there was no evidence of another individual's involvement in this crime. There is no other explanation as to how Pace came into possession of the stolen shoes, except as a principal in the larceny. While the requested charges may have been appropriate we do not find they were required. *Id.* Moreover, a trial judge may refuse to charge a lesser offense where the defendant denies he committed the lesser offense. *State v. Hartley*, __ S.C. __, 414 S.E. (2d) 182 (Ct. App. 1992). Here, Pace claims to have had nothing to do with the larceny.

## II.

During cross-examination of one the State's witnesses, counsel for appellant asked the witness if he had a criminal record. The prosecutor objected and the court, sent the jury out after stating in the presence of the jury the question was highly improper. During the ensuing *in camera* colloquy between the court and counsel, the judge referred to appellant's counsel as "a nice girl" and a "pretty girl." He admonished her for going on a "fishing expedition" and told her "You could get reported, you know, for that kind of thing." The prosecutor stated counsel's question was a "bizarre and unethical fishing trip." As it turned out, the witness had a conviction for petty larceny which the solicitor agreed was a crime of moral turpitude.

The judge made the following statement to the jury after it returned:

> All right. Now let me say what happened in this last thing and I'm going to let it calm down here. But, the question was asked, does he have a criminal record. Counsel had admitted that she did not know, it was a pitch in the dark, which is improper. And she's sorry, she's apologized to the Court . . . I hate to fuss at a pretty girl, fuss at an old man, but a pretty girl I hate to fuss. But it was a kind of below the belt shot. But she was doing the best, she thought. But anyhow as she gains experience—if they don't give it to her all she does have to do is ask me, and I certainly will. And she hasn't asked the Solicitor anyhow. It was a shot in the dark which implies wrongdoing. Don't hold it against her, she's a nice girl. I was young once myself, I put it to plain inexperience or whatever, but you'll get over it as you learn. So don't hold it against her. She's a nice girl.

This court is concerned about the way in which the trial judge referred to counsel for the appellant, both in front of the jury and out of its presence. It is doubtful a trial judge would consciously address a male attorney as a "nice boy" or a "handsome boy." Coupled with those references, the court made statements of the jury regarding counsel's inexperience and her action as "a shot in the dark which implies wrongdoing." In total context, we understand the trial judge was

trying to correct a procedural error of counsel. We also recognize trial judges have a difficult task. However, gender has no place in determining the standing of members of the legal profession. Female attorneys should not be addressed by any court in a manner which belittles them or intimates to them or others that they are viewed differently by the court.

Although we have expressed our concern, we do not find prejudicial error. As a procedural matter, counsel did not interpose an objection at trial. Moreover, viewed in the context of the trial, we do not find the remarks impaired counsel's ability to effectively represent the appellant. *See State v. Simmons*, 267 S.C. 479, 229 S.E. (2d) 597 (1976) (prejudicial error where trial judge threatened counsel with a jail sentence during closing argument and counsel ceased argument immediately thereafter).

Affirmed.