23872

STATE of South Carolina, Respondent v. Craig Layman GOOD, Petitioner.
(432 S.E. (2d) 463)

Supreme Court

*C. Rauch Wise,* Greenwood, and *South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*T. Travis Medlock, Donald J. Zelenka, Harold M. Coombs, Jr.* and *Norman Mark Rapoport,* of the *Atty. General's Office,* Columbia, and *Donald V. Myers, Sol.,* Lexington, *for respondent.*

Heard Apr. 20, 1993.

Decided June 7, 1993.

TOAL, Justice:

This criminal appeal is before us on a writ of certiorari to the Court of Appeals for review of the decision reported in *State v. Craig Layman Good,* — S.C. —, 417 S.E. (2d) 640 (Ct. App. 1992). We AFFIRM.

## Facts

The Petitioner, Craig Layman Good, and his identical twin brother, Timothy Sean Good, were indicted and tried together for the murders of their father and grandmother. In conjunction with the murder charges, the brothers were also indicted and tried for two (2) counts of armed robbery, grand larceny of a motor vehicle, and criminal conspiracy.

The brothers, both aged fifteen (15) at the time of the shooting, were tried in the Court of General Sessions for Saluda County in March 1990. At trial, the jury convicted both brothers on all of the charges in the indictment, and they were sentenced to life imprisonment. The notice of intent to appeal was filed and the case transferred to the South Carolina Court of Appeals.

The Court of Appeals affirmed Petitioner's conviction in *State v. Craig Layman Good,* — S.C. —, 417 S.E. (2d) 640 (Ct. App. 1992).[1] Petitioner filed a petition for rehearing which was denied by the Court of Appeals on May 28, 1992. We granted certiorari on December 8, 1992 to address two issues.

---

[1] The Court of Appeals reversed Timothy Sean Good's conviction in *State v. Timothy Sean Good,* — S.C. —, 417 S.E. (2d) 643 (Ct. App. 1992), and we denied the State's petition for writ of certiorari on November 5, 1992. The central issue before the Court of Appeals was whether the trial court erred in holding that the testimony of a guardian ad litem was a privileged communication. The Court of Appeals noted that the testimony, which was offered by

### Law/Analysis

The first issue is whether the Court of Appeals erred in holding that the trial judge was not required to instruct the jury on the law of accessory after the fact where the Petitioner had requested the charge to clarify the difference between being a principal and an accessory after the fact. The second issue is whether the Court of Appeals erred in holding that evidence of Petitioner's prior burglary conviction, related to an earlier burglary of his grandmother's residence, was admissible at trial.

### Accessory After the Fact

In *State v. Collins*, 266 S.C. 566, 225 S.E. (2d) 189 (1976), we were presented facts sufficient to give rise to a jury question as to whether the defendant was ever a principal to the crime. The defendant in *Collins* was indicted as a principal for armed robbery rather than as an accessory before the fact, even though he was intoxicated and in jail at the time the robbery was committed. *Id.* The trial court in *Collins* refused to instruct the jury on the difference between accessory before the fact and principal to a felony. We held that the defendant was entitled to have the jury instructed about the distinction and that the defendant may not be found guilty of accessory when he was only indicted for being a principal. *Id.*

Following our decision in *Collins*, a similar question arose in *State v. Gates*, 269 S.C. 557, 238 S.E. (2d) 680 (1977). In *Gates*, the passenger in defendant's car robbed a convenience store while defendant was parked outside in the parking lot. The defendant, relying on *Collins*, requested additional instructions to explain the difference between a principal and someone merely present at a crime scene. *Id.* In rejecting this argument, we held that the defendant was not entitled to an instruction on accessory where there was a factual distinction between a crime where the defendant was physically unable to participate and one where the defendant acted as the "getaway" driver. *Id.*

In *State v. Leonard*, 292 S.C. 133, 355 S.E. (2d) 270 (1987)

---

the guardian ad litem, was crucial to Timothy Good's theory of defense. After holding there was no privileged communication, the Court of Appeals ruled that Timothy Good was entitled to have the testimony presented to the jury.

(reckless homicide arising from the operation of a motor vehicle), we held that:

> [v]ehicle crimes are unique in that there can ordinarily be only one 'driver' of the vehicle at the time the offense is committed. The guilt of other participants, if any, can only be based on a theory of accomplice liability. Thus, when two or more defendants are jointly tried for a vehicular crime, the elements of proof as to the driver will be different than the elements of proof as to the other defendants. When different proof is required for each of multiple defendants, the trial judge's charge must clearly delineate the proof required as to each.

*Id.* at 136, 355 S.E. (2d) at 272 [citations omitted].

Our most recent case which addresses the jury instruction for accessory after the fact is *State v. Roof,* 298 S.C. 351, 380 S.E. (2d) 828 (1989). In reversing the murder conviction, we held that where the accessory instruction was given as to one defendant and not the other, it was equivalent to a comment on the facts by the trial judge.[2] *Id.* The dissent noted that the "defendant cannot be convicted of a crime for which he is not indicted if it is not a lesser included offense to that charged in the indictment." *Id.* at 354, 380 S.E. (2d) at 830 (C.J. Gregory dissenting).

The Petitioner asserts that where there is a close factual question between being the principal or being an accessory after the fact, then an instruction on the law is required to clarify the dissimilarity. Petitioner requested and the trial court instructed on "mere presence." Subsequently, the Petitioner requested the accessory instruction to assist in showing "mere presence" through the negative. If accessory after the fact is not charged in the indictment, but is instructed to clarify mere presence, a finding of accessory after the fact is the equivalent to a finding of not guilty. The real impact of the instruction is that it permits the jury to reach a compromise verdict on a non-charged offense. Moreover, to require an accessory instruction on these facts opens the door for every criminal defendant to create a quasi lesser-included offense for which they could not be convicted.

---

[2]Neither the Petitioner nor his brother received the accessory instruction; consequently, this case is cited only to illustrate the development of the law.

Petitioner and his brother have completely divergent stories as to the actual shooting. Petitioner states that he was outside the camper feeding the dogs when the actual shooting took place. Petitioner's brother, on the other hand, states that he was outside shaking out a rug when the Petitioner fired the weapon killing his father and grandmother. At trial, the State produced ample evidence to support the conclusion that the brothers acted together throughout the crime.

Unlike the defendants in *Collins, supra,* and *Leonard, supra,* the present facts have great potential for more than one principal engaged in a common action. In *Collins,* the defendant was intoxicated and in jail at the time of the robbery; therefore, he could only be guilty of accessory before the fact. In *Leonard,* the very nature of a vehicular offense eliminates the possibility of charging a driver and passenger with the same crime. *Id.* The rule which follows from a reading of the cases is that a jury instruction on the law of accessory is only required where the evidence points to an exclusionary offense which dictates that different proof is required also to each defendant.

In the present case, there is no exclusionary situation which eliminates one brother or the other from having participated in the murder as a principal.

### Evidence of a Prior Conviction

Petitioner next asserts that the Court of Appeals erred in holding that evidence of the details of a prior conviction for burglarizing Petitioner's grandmother's house was admissible.

The governing case law is derived from *State v. Lyle,* 125 S.C. 406, 18 S.E. 803 (1923). *Lyle* established the rule that evidence of other crimes committed by the defendant is inadmissible to show the bad character of the accused and that the accused acted accordingly. *Id.* Similarly, *Lyle* and its progeny have established exceptions to the "bad character" evidence rule where the evidence tends to establish: (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, or (5) identity. *Id.; see also State v. Simmons,* — S.C. —, 427 S.E. (2d) 175 (1993); *State v. Bell,* 302 S.C. 18, 393 S.E. (2d) 364 (1990); *State v. Rivers,* 273 S.C. 75, 254 S.E. (2d) 299 (1979).

The Court of Appeals held that since the evidence of the previous burglary was "some evidence of Craig's intent and motive, it tend[ed] to identify him as his grandmother's and father's murderer." *State v. Good,* — S.C. —, —, 417 S.E. (2d) 640, 642 (1992). Based on the defense theories, the Court of Appeals noted that the identity of the assailant was an issue raised at the outset of the trial.

In *State v. Simmons, supra,* we viewed evidence of the defendant's strikingly similar crimes against elderly victims as logically related to intent. Here the similarities are significant. Petitioner's prior conviction was based on his burglary of the same residence, taking similar items, and against the same victim as the murder, robbery, and grand theft. In fact, the earlier conviction was a result of Petitioner pleading guilty three to four months prior to the murder of his grandmother.[3] Here, just as in *Simmons,* the evidence tends to show offenses that are more than a mere similarity, but instead an interwoven and continuing course of conduct against the victims. *cf. State v. Bell, supra.*

Shifting the emphasis away from identity, the record establishes that the evidence was probative as to intent and motive. There would be little question about admissibility if the State had attempted to introduce this evidence; however, in the present case, it was the co-defendant brother who elicited the bad-character testimony. Because of this unusual posture, the issue appears focused more on identity than on intent or motive, but motive and intent were equally relevant questions which required resolution at trial. We agree with the State in their assessment that since the evidence would have been admissible against the defendants in the State's case in chief, the trial judge did not err in allowing the brother to introduce it.

Accordingly, for the reasons stated, the Court of Appeals' decision in *State v. Craig Layman Good,* — S.C., —, 417 S.E. (2d) 640 (Ct. App. 1992) is AFFIRMED.

HARWELL, C.J., and CHANDLER and MOORE, JJ., and L. HENRY McKELLAR, Acting Associate Justice, concur.

---

[3]Petitioner entered a plea of guilty based in part on his grandmother's statements to the authorities. The State asserts that this is an additional basis for a *Lyle* exception because it establishes a possible motive for the murder.