742 S.E.2d 29

**The STATE, Respondent,**

v.

**Teresa BLAKELY, Appellant.**

**Appellate Case No.2011–196627.**

**No. 5114.**

Court of Appeals of South Carolina.

Heard March 12, 2013.

Decided April 10, 2013.

Withdrawn, Substituted, and Refiled April 11, 2013.

Rehearing Denied May 23, 2013.

652

C. Rauch Wise, of Greenwood, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch Jr., both of Columbia, for Respondent.

PIEPER, J.

This appeal arises out of Appellant Teresa Blakely's[1] conviction for accessory after the fact to a felony. Blakely was initially acquitted of murder. She was subsequently tried for accessory after the fact to a felony. On appeal, Blakely raises multiple claims arising under the due process clauses of the Fourteenth Amendment to the U.S. Constitution and Article I, § 3 of the South Carolina Constitution, including: (1) the vindictive prosecution in this matter is barred; (2) the indictment for accessory after the fact to a felony following Blakely's acquittal of murder violates due process; and (3) the State's inconsistent positions in two separate criminal proceedings against the same defendant is prohibited. We affirm.

**FACTS**

Blakely and Kim Alexander were involved in a relationship before and during Blakely's marriage to Houston Fuller, the victim herein. Paul Morris, Alexander's brother, claimed he became aware of derogatory statements Fuller made in reference to Alexander. As a result, Morris vowed to avenge those statements by physically accosting Fuller. Morris arrived at the residence of Fuller and Blakely, began a physical altercation with Fuller, and ultimately killed Fuller during the course of the altercation. Blakely's fourteen-year-old daughter and her daughter's fourteen-year-old boyfriend were in the house during the altercation. Blakely pretended to call 911, told the teenagers to stay down, and further told the teenagers Morris' fight with Fuller involved the "Mexican Mafia." After check-

---

1. Blakely's name is listed as Teresa Blakely on the indictment for accessory after the fact to a felony but is listed as Teresa Fuller on the indictment for murder. We refer to her as Blakely throughout this opinion.

ing Fuller and finding no pulse, Blakely helped Morris load Fuller's body into Fuller's truck. Morris drove Fuller's truck to a steep bank and rolled the truck with the body down the embankment. Morris got into the vehicle driven by Blakely and Blakely dropped Morris off at a convenience store.

The State indicted Blakely for murder based on the theory that she aided and abetted Morris in killing Fuller. After a four-day trial, the jury rendered a not guilty verdict. After Blakely's acquittal, Morris pled guilty to voluntary manslaughter. Subsequently, Blakely was indicted for accessory after the fact to a felony and tried without a jury. Blakely moved the trial court to quash the indictment due to multiple violations of due process.[2] The trial court denied Blakely's motion to quash the indictment. After a bench trial, the court convicted Blakely and sentenced her to eight years, suspended upon the service of four years with three years' probation. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless the findings are clearly erroneous. *State v. McEachern*, 399 S.C. 125, 135, 731 S.E.2d 604, 609 (Ct.App. 2012). This court simply determines whether the trial court's factual findings are supported by any evidence. *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001). Appellate courts review questions of law de novo. *State v. Whitner*, 399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012).

First, Blakely argues the prosecution for accessory after the fact to a felony is the result of vindictive prosecution when the State could have originally indicted Blakely for both murder and accessory after the fact but, instead, only proceeded on the second indictment after Blakely exercised her right to a trial by jury and was acquitted of murder. We disagree.

The felony of murder is the killing of any person with malice aforethought, either express or implied. S.C.Code Ann. § 16–3–10 (2003). In a murder case, the corpus delicti consists of two elements: (1) the death of a human being; and

---

2. In her motion to quash the indictment, Blakely advanced the same arguments that she now argues to this court on appeal.

(2) the criminal act of another in causing that death. *State v. Weston*, 367 S.C. 279, 293, 625 S.E.2d 641, 648 (2006). Before an accused may be found guilty of being an accessory after the fact to a felony, the following elements must exist: (1) the felony has been completed; (2) the accused must have knowledge that the principal committed the felony; and (3) the accused must harbor or assist the principal felon. *State v. Legette*, 285 S.C. 465, 466, 330 S.E.2d 293, 294 (1985). "The assistance or harboring rendered must be for the purpose of enabling the principal felon to escape detection or arrest." *Id.* at 467, 330 S.E.2d at 294.

"The common law traditionally categorized the participants in a felony as accessory before the fact, principal first, principal second, and accessory after the fact." WILLIAM SHEPARD MCANINCH, W. GASTON FAIREY, AND LESLEY M. COGGIOLA, THE CRIMINAL LAW OF SOUTH CAROLINA 410 (5th ed.2007). Generally, under the common law, liability as an accessory essentially "shadowed" that of the principal. *See State v. Massey*, 267 S.C. 432, 443, 229 S.E.2d 332, 338 (1976) ("At common law an accessory could not be convicted unless his principal had been convicted."). In modern jurisprudence, principals and accessories have generally merged, with an exception for an accessory after the fact. *See* S.C.Code Ann. § 16–1–40 (2003) ("A person who aids in the commission of a felony or is an accessory before the fact in the commission of a felony ... is guilty of a felony and, upon conviction, must be punished in the manner prescribed for the punishment of the principal felon."). This means that, upon proper notice and proof, an accessory who provides any assistance may be treated the same as if he was the principal of the crime, but the accessory may not be convicted as both. *See State v. Sheriff*, 118 S.C. 327, 328, 110 S.E. 807, 807 (1922) (noting the common law and the criminal code recognize the "distinction between principals and accessories before the fact and, while the punishment is the same for each, that does not change the essential distinction or relieve the necessity of the appropriate allegations in an indictment"). Today, the accessory's culpability no longer shadows that of the principal. Accordingly, an accessory may be convicted even if the principal is not charged, is acquitted, or is not yet prosecuted. *See Massey*, 267 S.C. at 444, 229 S.E.2d at 338 (noting "the conviction of

the principal is no longer a condition precedent to the conviction of an accessory").

An exception to these modern notions of criminal liability applies to an accessory after the fact. While an accessory before the fact may be treated like a principal upon proper proof, an accessory after the fact is not generally treated like a principal of the crime. *See* S.C.Code Ann. § 16-1-55 (2003) (outlining lower classifications of punishment for persons convicted of the offense of accessory after the fact to a felony as compared to punishment for the principal felon); *State v. Good,* 315 S.C. 135, 139, 432 S.E.2d 463, 466 (1993) (holding there was no error in refusing to charge accessory after the fact because "there is no exclusionary situation which eliminates one [defendant] or the other from having participated in the murder as a principal."); *State v. Fuller,* 346 S.C. 477, 481, 552 S.E.2d 282, 284 (2001) (finding the defendant was not entitled to a jury instruction on accessory after the fact to murder, as the evidence did not eliminate the defendant as a principal first); *Vergara v. State,* 287 Ga. 194, 695 S.E.2d 215, 218 (2010) ("A person cannot be both a party to a crime and an accessory after the fact." (internal quotation marks omitted)). Moreover, accessory after the fact to a felony is not a lesser-included offense of murder. *Fuller,* 346 S.C. at 481, 552 S.E.2d at 284; *see Good,* 315 S.C. at 138–39, 432 S.E.2d at 465–66 (noting accessory after the fact is not a lesser-included offense of any of the offenses with which the defendant was charged, including murder, armed robbery, grand larceny of a motor vehicle, and criminal conspiracy). Accordingly, double jeopardy does not attach under these facts.[3] *See State v. Parker,* 391 S.C. 606, 612, 707 S.E.2d 799, 801 (2011) ("Under the law of double jeopardy, a defendant may not be prosecuted for the *same* offense after an acquittal, a conviction, or an improvidently granted mistrial." (emphasis added) (internal quotation marks omitted)).

Next, we review the claim of vindictive prosecution. In *State v. Fletcher,* 322 S.C. 256, 258–59, 471 S.E.2d 702, 704 (Ct.App.1996), this court was presented with a question regarding whether prosecutorial vindictiveness was indicated by the actions of the solicitor. "It is a due process violation to

---

3. On appeal, Blakely does not assert a double jeopardy claim.

punish a person for exercising a protected statutory or constitutional right." *Id.* at 259, 471 S.E.2d at 704 (citations omitted). However, "punishment of the offender is recognized as a proper motivation for a sentencing trial judge or a prosecutor." *Id.* at 260, 471 S.E.2d at 704. The presence of a punitive motivation "does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to non-criminal, protected activity." *Id.* "[A]n initial decision by the prosecutor should not freeze future conduct, because the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *State v. Dawkins,* 297 S.C. 386, 389, 377 S.E.2d 298, 300 (1989). A prosecutor "has discretion in choosing how to proceed with a case, including whether to prosecute in the first place and whether he brings it to trial or offers a plea bargain." *State v. Langford,* 400 S.C. 421, 435 n. 6, 735 S.E.2d 471, 479 n. 6 (2012).

 Our court in *Fletcher* noted that "the United States Supreme Court has fashioned certain rules as a protection against vindictive action in response to a criminal defendant's exercise of a statutory or constitutional right." *Fletcher,* 322 S.C. at 260, 471 S.E.2d at 704. Only "certain limited circumstances pose a realistic likelihood of vindictiveness by a prosecutor" and, therefore, warrant the application of a presumption of vindictiveness. *Id.* (internal quotation marks omitted). "The inquiry ... is not focused solely on the presence or absence of actual vindictive motive, but includes whether the action taken, which exposes the accused to an increased punishment, poses such a reasonable likelihood of vindictiveness as to require a presumption of vindictiveness." *Id.* at 260–61, 471 S.E.2d at 704 (internal quotation marks omitted).

South Carolina courts have not answered the exact question regarding whether prosecution on a new indictment after a defendant was acquitted on a separate charge following that defendant's exercise of his or her right to a jury trial gives rise to a presumption of vindictiveness. In *Fletcher,* we considered prosecutorial vindictiveness alleged by a defendant who had successfully asserted her right to appeal. Fletcher was arrested and charged with assault and battery and dis-

charging a firearm, both municipal charges. *Id.* at 259, 471 S.E.2d at 704. At the same time, Fletcher was also charged with pointing a firearm, a general sessions charge. *Id.* at 261 n. 3, 471 S.E.2d at 705 n. 3. After she was convicted in her absence on both of the municipal charges, she successfully appealed her convictions and the general sessions court reversed the municipal court for failure to provide proper notice of the trial. *Id.* at 259, 471 S.E.2d at 704. While the new trial on the municipal charges was pending, the solicitor directly indicted Fletcher for assault with intent to kill. *Id.* Fletcher requested the circuit court force the solicitor to elect between assault with intent to kill and pointing a firearm, arguing the two charges covered the same offense. *Id.* The circuit court ultimately dismissed the charge of assault with intent to kill. *Id.* The circuit court refused to dismiss the pointing a firearm charge despite Fletcher's motion to do so on the grounds of prosecutorial vindictiveness. *Id.* Fletcher was convicted of pointing a firearm. *Id.*

In its analysis regarding Fletcher's claim that the circuit court erred by not dismissing the pointing a firearm charge based on prosecutorial vindictiveness, this court determined the actions of the solicitor did not warrant the application of the presumption of prosecutorial vindictiveness even though "Fletcher exercised a procedural right to appeal the conviction arguably emanating from the same conduct which provided the basis for the greater charges." *Id.* at 261, 471 S.E.2d at 705. We emphasized the fact that "the decision to charge Fletcher with the offense of pointing a firearm was initiated at the same time the municipal charges were brought" and, therefore, it was not an action the solicitor took against Fletcher "after the exercise of a legal right." *Id.* (internal quotations omitted).

After determining insufficient evidence of a reasonable likelihood of prosecutorial vindictiveness existed to warrant application of the presumption, this court noted that in order to succeed on her claim of prosecutorial vindictiveness, Fletcher was "required to prove actual prosecutorial vindictiveness." *Id.* at 262, 471 S.E.2d at 705. "The only evidence presented to the trial court in support of the allegation of actual vindictiveness [was] the timing of the direct indictment." *Id.* In response to Fletcher's allegations of prosecutorial vindictiveness,

"the solicitor represented to the court that he was unaware of the pending municipal charges until the week prior to trial" and "argued the direct indictment was precipitated by a review of the file, revealing to him that the situation was more violent than just pointing a firearm because Fletcher actually fired the weapon at the alleged victim." *Id.* at 262, 471 S.E.2d at 705–06. We concluded that any inference of vindictiveness derived from the timing of the direct indictment was insufficient to prove an improper motivation because the evidence established probable cause to believe the crime had occurred; accordingly, we held Fletcher did not prove actual prosecutorial vindictiveness. *Id.* at 262–63, 471 S.E.2d at 706.

Blakely asserts our supreme court's holding in *Patrick v. State,* 349 S.C. 203, 562 S.E.2d 609 (2002), is applicable to the instant case. Patrick was originally indicted for burglary, two counts of armed robbery, assault and battery with intent to kill, and the use of a motor vehicle without the owner's consent. *Id.* at 205, 562 S.E.2d at 610. "All the indictments, except the burglary indictment, were *nol prossed* prior to trial." *Id.* Patrick was ultimately convicted of burglary and sentenced to life in prison. *Id.* Seventeen years after his conviction, Patrick was successful in obtaining a reversal through post-conviction relief (PCR). *Id.* at 205–06, 562 S.E.2d at 610. The State then indicted Patrick for all five original charges, and the jury convicted Patrick on all counts. *Id.* at 206, 562 S.E.2d at 610. Patrick's application for PCR was denied. *Id.* However, our supreme court granted Patrick's petition for certiorari. *Id.* at 205, 562 S.E.2d at 610.

In its analysis regarding Patrick's claim of prosecutorial vindictiveness, the supreme court cited *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), for the proposition that "the Due Process Clause of the Fourteenth Amendment prevent[s] a trial court from penalizing a defendant for choosing to exercise his right to appeal." *Patrick,* 349 S.C. at 209, 562 S.E.2d at 612. The supreme court found that in order for a presumption of prosecutorial retaliation to apply, Patrick would need to show a reasonable likelihood that retaliation was a motive behind bringing the additional charges. *Id.* If no such reasonable likelihood existed, the court determined Patrick would have the burden to prove actual retaliation. *Id.* The court found a presumption of

prosecutorial vindictiveness applied because the facts presented a reasonable likelihood that the solicitor brought the additional charges in retaliation for Patrick's exercise of his right to appeal. *Id.* at 210, 562 S.E.2d at 612. The court specifically noted that seventeen years passed between the trials, but no new evidence was discovered and none of the facts or witnesses available to the prosecution had changed. *Id.* at 209–10, 562 S.E.2d at 612. In analyzing whether the State rebutted the presumption, the court noted that the solicitor's reasons for prosecuting the previously *nol prossed* charges included: (1) it was in the interest of the State of South Carolina; and (2) it was common practice not to prosecute additional charges once a solicitor had a life sentence on one charge. *Id.* at 210, 562 S.E.2d at 612. The supreme court held the State had not rebutted the presumption of prosecutorial vindictiveness with these "fairly weak reasons for bringing the charges, especially considering the length of time between the original trial and the retrial." *Id.*

Though informative, *Fletcher* and *Patrick* are not directly applicable to the instant matter because Blakely did not exercise her right to appeal or file an application for PCR; instead, Blakely was acquitted on one charge after she exercised her right to a jury trial, and then indicted on another. We find persuasive the decisions of several federal circuit courts of appeals that have considered the exact issue at bar and have held a new prosecution following an acquittal by a jury on separate charges does not, without more, give rise to a presumption of vindictiveness. Most recently, the Eleventh Circuit decided no presumption of prosecutorial vindictiveness existed when the government brought a second indictment for alien smuggling following the defendant's acquittal after a jury trial on drug and firearm charges when "the second indictment did not follow a successful appeal ... nor did it seek heightened charges." *United States v. Kendrick*, 682 F.3d 974, 983 (11th Cir.2012). The Second Circuit found the prosecution of a defendant on federal weapons charges after an acquittal following a jury trial on Racketeer Influenced and Corrupt Organizations Act (RICO) charges was entirely legitimate "and certainly cannot be considered vindictive." *United States v. Johnson*, 171 F.3d 139, 141 (2d Cir.1999). The Eighth Circuit held the filing of additional charges after an

acquittal by the jury did not evoke the presumption of vindictive prosecution because the "exercise of one's choice to proceed with a jury trial rather than a bench trial does not compel a special presumption of prosecutorial vindictiveness whenever additional charges are brought after a jury trial is demanded." *United States v. Rodgers*, 18 F.3d 1425, 1430–31 (8th Cir.1994) (internal quotation marks omitted). Additionally, the Third Circuit found:

> We will not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy. Such a presumption is tantamount to making an acquittal a waiver of criminal liability for conduct that arose from the operative facts of the first prosecution. It fashions a new constitutional rule that requires prosecutors to bring all possible charges in an indictment or forever hold their peace.... We reject such a proposition for it undermines lawful exercise of discretion as well as plain practicality.

*United States v. Esposito*, 968 F.2d 300, 306 (3d Cir.1992).

■ While we recognize Blakely exercised her constitutional right to a jury trial on the first charge, we also recognize none of the cases we have cited find a presumption of vindictiveness arises *solely* from the prosecutor's decision to proceed on a new charge after a defendant's acquittal by the jury on a previous charge. Blakely argues a presumption of vindictiveness exists here because the State could have originally indicted her for both murder and accessory after the fact but, instead, the State elected to indict her for accessory after the fact only after she was acquitted for murder. Blakely asserts the State failed to provide an explanation regarding why the charges were not tried together and argues the indictment for accessory after the fact was retaliatory because the State was unsuccessful in securing a conviction for murder. However, Blakely admitted to the trial court that if the State originally pursued a two-count indictment, the State would have been required to take somewhat inconsistent positions as to each crime. The second indictment was issued after Blakely was acquitted of murder and not after Blakely filed an appeal or an application for PCR. The State did not seek a heightened charge or increased punishment. The fact

that Blakely exercised her right to a jury trial on the first charge is, standing alone, insufficient to prove such a reasonable likelihood of vindictiveness as to require a presumption of vindictiveness. Blakely makes no allegations of actual vindictiveness other than the fact that the State issued a second indictment after an acquittal by the jury. We conclude a presumption of vindictiveness does not arise and that Blakely has not presented sufficient evidence of actual prosecutorial vindictiveness. Therefore, based upon our review of applicable jurisprudence, we find the record supports the trial court's denial of Blakely's motion to quash the indictment.

Second, Blakely argues the indictment for accessory after the fact to a felony after she had been acquitted of murder violates due process where the American Bar Association's (ABA) standards for prosecutors involving joinder and severance of cases prohibit prosecution in the instant matter. We disagree.

Though the ABA standards for criminal justice are a useful point of reference, these standards are only guides and do not establish the constitutional baseline. *Rompilla v. Beard*, 545 U.S. 374, 400, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). The U.S. Constitution does not codify the ABA's model rules. *Montejo v. Louisiana*, 556 U.S. 778, 790, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). South Carolina does not require mandatory joinder of indictments in one trial but instead, leaves the decision of whether to join charges to the discretion of the trial court after motion by one party. *See State v. Hinson*, 253 S.C. 607, 613, 172 S.E.2d 548, 551 (1970); *State v. Evans*, 112 S.C. 43, 45, 99 S.E. 751, 751 (1919). Federal courts have rejected the argument that the initial choice to withhold certain charges and then later proceed on those charges after an acquittal amounts to a constitutional violation. *See Paradise v. CCI Warden*, 136 F.3d 331, 336 (2d Cir.1998) ("Accepting this contention would encourage prosecutors to overcharge defendants, by charging both a greater number of crimes and the most severe crimes supported by the evidence. This is a result we do not wish to promote. Instead, the validity of a pretrial charging decision must be measured against the broad discretion held by the prosecutor to select the charges against the accused." (internal quotations omitted)); *Johnson*, 171 F.3d at 141 (finding no error in the

prosecution of new charges after an acquittal even when knowledge of the new charges existed prior to the first trial).

Although Blakely argues the ABA standards involving joinder and severance of cases preclude prosecution, we believe these standards are not controlling or dispositive. While our supreme court and this court have, on occasion, referred to ABA standards,[4] our jurisprudence has not adopted the standards as a rule of court. Furthermore, we find Chief Justice Toal's cautionary dissent in *Ard v. Catoe* instructive as to the weight of the reliance South Carolina courts should place on the ABA standards:

> Additionally, I note that in support of their conclusion that trial counsel were deficient, the majority cites extensively to American Bar Association (ABA) guidelines on the prevailing norms of practice. The majority justifies their reliance on ABA guidelines by pointing to an endorsement of ABA standards in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In my opinion, however, the *Strickland* court makes it clear that the ABA standards, although helpful, are "only guides" for assessing reasonableness. . . . This Court has never adopted the ABA guidelines as the standard for prevailing professional norms in South Carolina.

---

4. *See Council v. State,* 380 S.C. 159, 172–73, 670 S.E.2d 356, 363 (2009) (noting that trial counsel's conduct fell below the standards set by the ABA for the appointment and performance of counsel in death penalty cases); *Ard v. Catoe,* 372 S.C. 318, 332, 642 S.E.2d 590, 597 (2007) (citing the ABA's standards for defense counsel's performance regarding investigation of a capital case in support of its decision to affirm the PCR court's finding of ineffective assistance of counsel); *Matter of Goodwin,* 279 S.C. 274, 277, 305 S.E.2d 578, 580 (1983) (noting the ABA standards' suggested procedure for a trial court's handling of a conflict between counsel and a criminal defendant client intending to commit perjury); *Harden v. State,* 276 S.C. 249, 253–56, 277 S.E.2d 692, 694–95 (1981) (finding the rationale in ABA standard 14–3.3 regarding whether to accept guilty pleas and plea agreements persuasive); *State v. Way,* 264 S.C. 280, 285, 214 S.E.2d 640, 642 (1975) (Bussey, J., dissenting) (referencing the ABA standards' provision regarding the function of the trial judge); *State v. Stanley,* 365 S.C. 24, 39, 615 S.E.2d 455, 463 (Ct.App.2005) (citing, among other authorities, the ABA Standards for Criminal Justice, § 6–1.1 (2d ed.1980), for the premise that a judge has a responsibility for safeguarding both the rights of the accused and the rights of the public in the administration of criminal justice).

372 S.C. 318, 338 n. 19, 642 S.E.2d 590, 600 n. 19 (2007) (Toal, C.J., dissenting, and Burnett, J., concurring with the dissent); *see also Medlin v. State,* 276 S.C. 540, 544, 280 S.E.2d 648, 650 (1981) (Littlejohn and Gregory, JJ., concurring in part and dissenting in part) (noting "no other state and no other jurisdiction has adopted the ABA Standards as a rule of court"). Accordingly, while the ABA standards may be useful or may offer assistance in the analysis of an issue, these standards are not controlling or dispositive. Moreover, with respect to Blakely's specific claim, we note the ABA standards do not create a due process right; instead, due process rights emanate from the U.S. Constitution and the South Carolina Constitution. Therefore, we find Blakely's second argument is without merit.

Third, Blakely argues the State took inconsistent positions in the two separate criminal proceedings against Blakely and, therefore, violated due process. We disagree.

In support of her argument, Blakely cites to *Smith v. Groose,* 205 F.3d 1045 (8th Cir.2000). However, the *Groose* court held the state violated the defendant's due process rights when it used one of a codefendant's two factually contradictory versions of events surrounding the murders to convict the defendant, and then relied on another version at a later trial to convict someone else of the same murders. *Id.* at 1051–52. In the instant matter, the State merely pursued two different legal theories. Blakely cites no other authority prohibiting the State from asserting two different legal theories based on the facts presented. Accordingly, we affirm as to this issue.

## CONCLUSION

For the aforementioned reasons, the judgment of the trial court is hereby **AFFIRMED.**

SHORT and THOMAS, JJ., concur.