2123

The STATE, Respondent v. Lamansda McCLURE, Appellant.

(440 S.E. (2d) 405)

Court of Appeals

*Asst. Appellate Defender Tara Dawn Shurling*, of *South Carolina Office of Appellate Defense*, Columbia, and *W. Barry Bland* and *David E. Turnipseed*, Spartanburg, *for appellant*.

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Deputy Atty. Gen. Charles W. Gambrell, Jr., Sr. Asst. Attys. Gen. Treva G. Ashworth* and *Harold M. Coombs, Jr.*, Columbia, and *Sol. Holman C. Gossett, Jr.*, Spartanburg, *for respondent*.

Heard Dec. 8, 1993.

Decided Jan. 24, 1994. Reh. Den. Mar 3, 1994.

GOOLSBY, Judge:

A jury convicted Lamansda McClure of murder, assault and battery with intent to kill, and armed robbery. McClure argues his convictions should be overturned because his confession was coerced and because he was entitled to and did not receive a jury instruction regarding the offense of accessory before the fact. We affirm.

The murder and robbery occurred at a pawn shop in 1991. Robert Daryl Phillips, a witness to the robbery, testified he was inside talking to the shop owner's son, George Whetsell, when a man came into the pawn shop.

The man gave Whetsell a ring and asked how much Whetsell would loan him for it. While Whetsell was examining the ring, Phillips was leaning on a wooden counter reading a magazine. Then, Phillips felt something touch him behind his ear and heard a loud gunshot. Phillips realized he had been shot. Phillips fell to the floor and heard Whetsell yell, "Oh, no." Then Phillips heard two more shots. He saw the man leap over the counter, grab a number of items out of the display case, and run out the front door.

Whetsell did not survive the shooting. Phillips suffered serious injuries, including paralysis of his right arm and the left side of his face.

The police later found the murder weapon near a fence. They learned the gun had been reported stolen following a burglary. The police also learned a VCR had been stolen at the same time that the gun had been taken. The police recovered the stolen VCR and traced it to a third party who claimed he had purchased it from McClure. The police then arrested McClure and questioned him about both the gun and the VCR.

On January 17, 1991, McClure gave a statement to the police in which he indicated he helped plan the robbery of the pawn shop; he discussed with an individual that he identified as Fred Turner the splitting of "profits" to be made from the robbery; he told Turner he was "game" for the idea; he gave a gun and a ring to Turner to be used in the robbery; he agreed to the robbery plan that they later modified somewhat when he agreed to meet Turner in a field near the pawn shop after

the robbery; he stood in the field where he could observe the rear of the pawn shop; he heard three shots being fired and afterward saw Turner "come running up"; Turner handed him some money, gold jewelry, and two weapons, one of which was the gun that he had given Turner; Turner told him to get rid of the latter because Turner had shot a man with it; and he tossed the gun over a fence.

The next day, however, McClure gave another statement in which he admitted to committing the murder, assault, and robbery and to giving his girlfriend, brother, and mother some of the jewelry stolen from the pawn shop.

## I.

On appeal, McClure argues the trial judge erred in admitting his second statement because the police threatened to arrest his family members unless he confessed to the pawn shop offenses.

Before trial, the trial judge held a hearing to determine the voluntariness of the second statement. McClure testified he could hear his family from the room in which the investigating officers, Sergeant Henderson and Captain Crowe, were interrogating him. McClure claimed Captain Crowe told him, "We have your family up here now," and he claimed Sergeant Henderson told him, "You can either cooperate with me or I'll lock every damn one of them up."

Both officers involved in the interrogation denied threatening McClure with the arrest of his family if McClure failed to cooperate. They acknowledged, however, members of McClure's family had been brought in the police station.

We recognize a threat like the one described by McClure, if it occurred, could render McClure's confession involuntary. *See State v. Corns*, — S.C. —, 426, S.E. (2d) 324 (Ct. App. 1992) (coercion of confession through veiled threats against defendant's family members rendered confession involuntary). We also recognize, however, the conclusion of the trial judge on issues of fact as to the voluntariness of a confession will not be disturbed on appeal unless it is so manifestly erroneous as to show an abuse of discretion. *State v. Rochester*, 301 S.C. 196, 391 S.E. (2d) 244 (1990). The question of the voluntariness of McClure's confession came down to a question of credibility. The trial judge resolved the question

in favor of the officers. We have no quarrel with that, finding, as we do, no abuse of discretion.

## II.

McClure also argues the trial judge erred in refusing to charge the jury on the offense of accessory before the fact, an offense not alleged against him in the indictment.

Where, as here, a defendant, who has been indicted as a principal rather than as an accessory before the fact, seeks a charge on the distinction between accessory before the fact and principal to a felony, the trial judge must instruct the jury about the distinction if "the evidence points to an exclusionary offense." *State v. Good,* — S.C. —, —, 432 S.E. (2d) 463, 466 (1993). Here, the evidence does not so point. It reveals no exclusionary situation that eliminates McClure from having participated in the murder at the pawn shop as a principal. *See id.* (a defendant was not entitled to an instruction on accessory before the fact where the defendant blamed his twin brother for murdering their father and grandmother inside a camper while the defendant was outside the camper performing a domestic chore). Indeed, the statement McClure gave to the police on January 17, 1991, which he cites as the evidence that warranted the requested charge, paints McClure as anything but an accessory before the fact. *See State v. Gates,* 269 S.C. 557, 238 S.E. (2d) 680 (1977) (a defendant held not entitled to an instruction on accessory where there was a factual distinction between a crime where the defendant was physically unable to participate and one where the defendant acted as a "getaway" driver); *cf. State v. Chavis,* 277 S.C. 521, 290 S.E. (2d) 412 (1982) (evidence that the defendant, who was three miles away playing cards at the time a robbery was committed, helped plan the robbery, supplied the tools and weapons necessary for the robbery, "cased" the scene of the robbery beforehand, and received a portion of the proceeds held sufficient to convict the defendant as a principal).

The trial judge, therefore, committed no error in refusing to charge the jury on the offense of accessory before the fact.

Affirmed.

HOWELL, C.J., and CURETON, J., concur.