**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4061

NICOLAS NICOLAOU,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4149

GEORGE BASLE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4261

JOHN DAVID MICHAEL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4298

SYLVIA MICHAEL,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-97-115-AQW)

Argued: January 29, 1999

Decided: May 20, 1999

Before WILKINSON, Chief Judge, and LUTTIG and
TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Henk J. Brands, KELLOGG, HUBER, HANSEN, TODD
& EVANS, Washington, D.C., for Appellants. Sandra Wilkinson,
Assistant United States Attorney, Greenbelt, Maryland, for Appellee.
**ON BRIEF:** K. Chris Todd, KELLOGG, HUBER, HANSEN, TODD
& EVANS, Washington, D.C.; Ronald R. Rubin, RONALD R.
RUBIN, CHARTERED, Rockville, Maryland, for Appellants
Michael; William B. Purpura, Baltimore, Maryland, for Appellant
Nicolaou; James Savage, Rockville, Maryland, for Appellant Basle.
Lynne A. Battaglia, United States Attorney, Beth P. Gesner, Assistant
United States Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

Defendants John and Sylvia Michael, George Basle, and Nicholas
Nicolaou were convicted on a variety of charges arising out of their
involvement in an illegal sports-betting operation and attempts to con-

2

ceal its proceeds. All four defendants challenge their convictions, and John and Sylvia Michael appeal their sentences as well. Finding no reversible error, we affirm the conviction and sentence of each defendant.

I.

For many years, appellant John Michael ran an illegal sports-betting operation out of his used-car lot, "John Michael Auto Sales ("JMAS")," in Montgomery County, Maryland. After an extensive investigation, on November 11, 1995, federal law enforcement agents executed search warrants on JMAS and several other sites connected with Michael's illegal gambling operation. On March 31, 1997, a grand jury of the United States District Court for the District of Maryland issued a multiple-count indictment against John Michael, Nicholas Nicolaou, George Basle, and four others for conducting an illegal gambling business, in violation of 18 U.S.C. § 1955, and for conspiring to do so, in violation of 18 U.S.C. § 371. In the indictment and at trial, the government alleged that John Michael was the ringleader of the operation, and that Nicholas Nicolaou worked for Michael, accepting wagers, paying winners and collecting from losers. According to the government's theory, George Basle was one of several "partners" who received a cut of the winnings from all betting action they directed to Michael's operation. The government further alleged that John Michael conspired to launder the proceeds of the illegal gambling business, and did so, in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(1), respectively, primarily by depositing his winnings -- attributed to "car sales" -- in the JMAS bank account. Finally, the government charged John Michael and his wife of thirty years, Sylvia Michael, with violating 26 U.S.C.§ 7206(1) by filing false tax returns omitting the gross income from the gambling business for the years 1991 through 1994.

The prosecution's case at trial included the testimony of other members of the organization who had pleaded guilty, individuals who had placed bets with the organization or the defendants, agents who had seized physical evidence of the gambling organization, a gambling expert who had analyzed the seized records, and a number of witnesses who had reviewed the Michaels' financial and tax records.

3

Following a five-week jury trial in the United States District Court for the District of Maryland, defendants were convicted on all counts and the court sentenced each to a term of imprisonment.

II.

Appellants John Michael, Nicholas Nicolaou, and George Basle challenge their gambling and conspiracy convictions on two related grounds. First, they argue that the district court erroneously charged the jury on the elements of an illegal gambling business. Second, appellants contend that the court improperly refused their request for a specific unanimity instruction.**1** With respect to the former assignment of error, although we agree that the district court erroneously instructed the jury, we nonetheless affirm because appellants cannot show that the error affected their substantial rights. As to the latter, we conclude that the district court committed no error.

A.

The gambling defendants argue first that their convictions must be reversed because the district court failed to comply with our decision in United States v. Gresko, 632 F.2d 1128 (4th Cir. 1980), interpreting the elements of 18 U.S.C. § 1955. Section 1955(a) makes it unlawful to conduct an "illegal gambling business," which section 1955(b)(1) proceeds to define as one that

> (i) is a violation of the law of a State or political subdivision in which it is conducted;

> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

_____

**1** John Michael argues that because the gambling conviction is a necessary precondition to each money-laundering count, the asserted instructional errors on the gambling counts require reversal of the money-laundering convictions as well. Because we find no reversible error on the gambling convictions, we do not disturb the money-laundering verdicts.

4

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

This court held in Gresko that the five-person requirement must be satisfied in conjunction with the third element. That is, we held that section 1955 covers only those gambling operations that "involve at all times during some thirty day period at least five persons," Gresko, 632 F.2d 1128, 1132 (4th Cir. 1980), or that involve at least five persons on any single day on which it had gross revenues of $2,000. In Gresko, the court reversed a section 1955 conviction that was based on instructions that would have allowed for conviction on a jury finding simply that the business "involved five people at one time or another and operated for more than thirty days." Id. at 1135. Although these instructions would seem perfectly consistent with the plain text of the section, which includes no evident conjunctive requirement, we are bound by the earlier panel's conclusion to the contrary. See Industrial Turnaround Corp v. NLRB, 115 F.3d 248, 254 (4th Cir. 1997) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court.") (internal quotation marks omitted). Appellants contend that the district court's instructions in this case suffered from the same defect as the Gresko charge, and that their resulting convictions should therefore suffer the same fate.

Because appellants did not timely object to the lack of a Gresko instruction, our review is for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Although appellants did submit a request for a proper Gresko charge, the record belies their claim on appeal that they "further objected" on these grounds before the instructions were read to the jury. Appellants contend first that the original request for a Gresko instruction, standing alone, served to put the district court on notice of their objection and thus preserve the exception for appeal. We agree, however, with our sister circuits that have recognized that the requirements of Rule 30 are not satisfied simply by the submission of requested instructions. See, e.g., United States v. Graziano, 710 F.2d 691, 696 n.8 (11th Cir. 1983); United States v. Byrd, 542 F.2d 1026, 1027 (8th Cir. 1976). Having considered the requested instruction and received no objection

5

to his actual charge, "the trial judge might well[have] believe[d] that his instructions as finally formulated incorporate[d] the substance of any instructions previously tendered by the parties." Byrd, 542 F.2d at 1027. This is especially so where, as here, the district court did in fact incorporate almost verbatim sentences from both the Gresko decision and the requested Gresko charge. Compare J.A. at 492-93 (district court's instructions) with Gresko, 632 F.2d at 1132 ("The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions."), and J.A. at 552 (defendant John Michael's requested jury instructions) ("A four person operation with changing personnel would be outside the reach of the statute.").

As for appellants second contention, we simply disagree that they ever lodged an actual Gresko objection at all. After reviewing the court's intended instructions, appellants stated only that they wished to "renew [the] request" that the court instruct the jury that it "had to be unanimous as to which five [individuals] were involved at a particular time." J.A. at 445. While this renewed request qualifies as an objection to the lack of a specific unanimity instruction, discussed at greater length below, it cannot serve double duty as a valid Gresko objection as well. A party wishing to preserve an exception to a jury instruction must "stat[e] distinctly the matter to which he objects and the grounds of his objection." See Fed. R. Crim. P. 30. Appellants distinctly stated their objection to the lack of a specific unanimity instruction -- nothing more, nothing less. Because appellants failed distinctly to state their objection to the instructions on the elements, the court was not "apprised adequately of the disputed matter and of the need to take corrective action to avoid a new trial." United States v. Castro, 776 F.2d 1118,1129 (3rd Cir. 1985). Thus, we conclude that while appellants may have timely objected on the absence of a "specific unanimity" charge, see below, they did not do so with respect to the court's failure to give a satisfactory Gresko instruction, and our review on that question is for plain error only.

As a threshold matter, we agree with appellants that the district court erred in charging the jury, even though the district court's instructions in this case were far more detailed than those given in Gresko and discussed above. The district court instructed the jury that the government must prove the three essential elements of the crime,

6

listed those elements individually, and then explained them in some detail. In relevant part, the district court explained that

> [t]he government must prove beyond a reasonable doubt . . . that five or more persons conducted, financed, managed, supervised, directed or owned the gambling operation described in the indictment. A four-person operation with changing personnel would be outside the reach of the statute. . . .
>
> The government must prove beyond a reasonable doubt . . . that at least five people conducted, financed, managed, supervised, directed, or owned an illegal gambling business that was in operation for more than thirty years[sic] or that had gross revenue in excess of $2,000 in any one day.

J.A. at 491-92. As with the instruction invalidated in Gresko, however, the district court's charge would allow the jury to convict if it concluded that defendants were involved in an illegal gambling business that satisfied the five-person and durational or revenue elements at different times. So, for instance, a four-person gambling operation that added a fifth member to its ranks on its thirty-first day in substantially continuous operation would immediately upon augmentation be covered by this jury charge. Because, at least under Gresko, "such is not the law", Gresko, 632 F.2d at 1135, we must conclude that the district court's instructions were in error.

The second step in our plain error inquiry is to determine whether the identified error is, in fact, plain. There is no question that this prong of the analysis is satisfied. Our holding in Gresko is unambiguous and now of some vintage, making the district court's error sufficiently "clear" and "obvious" to qualify as plain. See Olano, 507 U.S. at 734.

Proceeding to the third prong of the plain error analysis, we conclude that the error, however, did not affect appellants' substantial rights. As we recently noted, this inquiry differs from harmless error review in that "[i]t is the defendant rather than the Government who bears the burden of persuasion." United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1997) (quoting Olano, 507 U.S. at 734 (alteration

7

in original)). Because the error in this case, as in <u>Hastings</u>, is one of misinstruction, rather than noninstruction, on the elements of the offense charged, it is not one of those "special category of forfeited errors that can be corrected regardless of their effect on the outcome of the proceedings." <u>Hastings</u>, 134 F.3d at 240. Instead, before we may notice the error, defendants must satisfy their burden of showing that the error "actually affected the outcome of the proceedings." <u>Id</u>. at 239. Thus, in order for the defense to establish that the jury misinstruction altered the outcome of the trial, it had to show that the proper instruction, on the same evidence, would have resulted in acquittal, or at the very least a hung jury. <u>See id</u>. at 240. This appellants have failed to do.

The government presented evidence at trial that Michael's illegal gambling business involved more than a dozen people and was in operation at the very least for the three-year period between October 1992 and November 1995 covered by the indictment. The jury heard from two cooperating witnesses, Nicolas Alexandrou and Kostas Vellios, who testified at trial to their participation in the business, and heard evidence of the involvement of, among others, three additional partners ("Sonny," "Steve," and "Harold"), three "sub-books" who pleaded guilty prior to trial (Michael Magnolia, Rizos Hadoulis, and Raymond Duncan), and John Michael's daughter Maria, who also pleaded guilty before trial. In response, defendants argued, respectively, that the operation <u>never</u> involved five people at once (Michael, Basle), or that, even if it had, they either withdrew before it attained that size (Nicolaou) or were never involved at all (Basle). Even more significant is what defendants did <u>not</u> argue. They presented no evidence to suggest, and made no arguments to the effect, that while there may have been five people involved in the operation <u>at some point</u>, there were never five involved for thirty days at a time. The issues in dispute at trial were exclusively those of size and defendants' involvement, not whether "size and duration coalesce[d]." <u>Gresko</u>, 632 F.2d at 1134. That being so, appellants simply have not borne their burden of showing that a complete <u>Gresko</u> instruction, with its attendant emphasis on the coalesence of these elements, would have resulted in a different outcome.[2] Accordingly, we must decline to notice the error.

_____

[2] In <u>Gresko</u> itself, we based our finding of a "substantial likelihood that the [instructional] error was prejudicial" on the "bare sufficiency of the Government's proof." <u>Gresko</u>, 633 F.2d at 1134. Appellants are unable to establish that the government's evidence in this case suffers from the same infirmity.

8

B.

Appellants next claim that the district court committed reversible error by refusing to instruct the jury that it had to be "unanimous as to which five [persons] were involved at a particular time." Because we do not believe section 1955 requires such unanimity as a matter of law, we find no error in the court's refusal to give this requested instruction.

Relying on United States v. Gilley, 836 F.2d 1206 (9th Cir. 1988), appellants contend that a "specific unanimity" instruction was required in order to avoid the possibility of a conviction based on less than unanimous agreement as to the satisfaction of the five-person and thirty-day elements, either separately or in conjunction. See Gilley, 836 F.2d at 1213. Appellants argue that the general unanimity instruction was insufficient because it would allow for a conviction despite the jury's failure unanimously to agree on a particular set of facts. For example, a conviction would be possible under the general instruction where some jurors thought five people were involved during one thirty-day period and the remaining jurors thought so with respect to a different five people or over a different such period. Although we agree that these instructions would permit a guilty verdict under these circumstances, we also believe such is perfectly consistent with the law.

The district court twice instructed the jurors that they must be unanimous as to the elements of the offense. Section 1955 by its plain language requires no more. In order to convict, the jury must unanimously agree that the gambling business was illegal under state law and, after Gresko, involved five or more persons at all times over a thirty-day period or on any single day in which the gross revenues exceeded $2,000. As long as each member of the jury agrees that some five persons were involved at all times over some thirty-day period or on any one single day in which the gross revenues exceeded $2,000, the law is satisfied. Cf. United States v. Hall, 93 F.32 126, 130 (4th Cir. 1996) (declining to require jury unanimity as to which five persons were involved in a continuing criminal enterprise as long as "each juror finds that some five persons were in agreement"). Section 1955 is not concerned with which individuals, aside from defendants, were involved in the gambling operation over which thirty-day

9

period (so long, of course, as that period is covered by the indictment). Rather, the section's evident aim is to punish involvement in gambling operations of a certain scale. See Gresko, 632 F.2d at 1132. As long as all twelve jurors were convinced beyond a reasonable doubt that the operation in question achieved that scale, the jury was entitled by section 1955 to convict. We decline to add to the statute. We therefore conclude that the district court committed no error in refusing appellants' request for a specific unanimity instruction.**3**

III.

Appellants John and Sylvia Michael also contend that their convictions pursuant to 26 U.S.C. § 7206(1) for filing false tax returns should be reversed because the district court failed to instruct the jury on the "critical element" of the offense, the defendants' belief in the falsity of their tax return. Again, we disagree.

Under section 7206(1), the government must prove that "(1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury;

_____

**3** Even assuming, arguendo, that we were prepared to require a specific unanimity charge, as the Gilley court did, in those section 1955 cases in which the possibility of juror confusion was especially great, we would decline to do so in this case, the facts of which are "a far cry from Gilley." United States v. Zizzo , 120 F.3d 1338, 1358 (7th Cir. 1997). In Gilley, the Ninth Circuit recognized that "[u]sually a general unanimity instruction suffices," id. at 1211, but required a specific unanimity charge as to "who did what when" because evidence presented at trial suggested that the number of participants in the gambling business at times dipped below the statutory threshold. Gilley, 836 F.2d at 1212 ("Because the evidence does not unequivocally show that five people were involved at all times, we cannot say that the guilty verdict rested on unanimous agreement on a single thirty day period."). In this case, the prosecution introduced overwhelming evidence, including the testimony of several members of the organization who had previously pleaded guilty, that considerably more than five people were involved in the operation throughout the period covered by the indictment. As "even Gilley recognized . . . a specific unanimity instruction is unnecessary when the evidence clearly establishes that more than five people were involved in the gambling business at all times." Zizzo, 120 F.3d at 1358.

10

(3) <u>the defendant did not believe the return to be true and correct as to every material matter</u>; and (4) the defendant acted willfully." <u>United States</u> v. <u>Aramony</u>, 88 F.3d 1369 (4th Cir. 1996) (emphasis added). In listing the elements of the offense of filing a false tax return, the district court instructed the jury as follows:

> The government must prove beyond a reasonable doubt count one -- element one, the first is that the defendant made or caused to be made and subscribed to a federal tax return for the year in question; two, that second element is that the government must prove that the tax return was false as to a material matter, that is, it contained an understatement of gross income; third, that the return contained a written declaration that it was made under the penalties of perjury; and then, fourth, that when defendants made or caused to be made and when they signed the return they did so willfully and knowingly . . . .
>
> It is not enough for the government to prove simply that the tax return is erroneous.

J.A. at 520. Appellants are correct that these instructions, when viewed in isolation, would seem to omit the "critical belief-of-falsity element."

The charge was not given in isolation, however, and we will not evaluate it as though it were. <u>See United States</u> v. <u>Rahman</u>, 83 F.3d 89, 92 (4th Cir. 1996) ("[I]n reviewing the propriety of jury instructions, we do not view a single instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law."); <u>Mazzell</u> v. <u>Evatt</u>, 88 F.3d 263, 267 (4th Cir. 1996) (noting that it is a "basic maxim" that "an allegedly erroneous instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record" (internal quotations and citations omitted)). When we consider the instructions in their entirety, and in the context of the evidence presented at trial, it becomes clear that they would not, as appellants suggest, permit a conviction for mere carelessness or negligence in submitting false returns. The district court instructed the jury on the meaning of

11

"knowingly," "willfully," and "intentionally" at the outset of its instructions. In so doing, the court explained that

> [w]illfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids. That is to say, with bad purpose to disobey or to disregard the law.
>
> A defendant's conduct was not willful if it was due to negligence, inadvertence, or mistake, or was the result of a good faith misunderstanding of the requirements of the law.

J.A. at 485. In addition, in instructing the jury on the law of conscious avoidance, the district court charged that

> [i]f you find that the defendant was aware of a high probability, that is, the statement was false, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed, that is, that the statement was true, he or she may not be convicted.

J.A. at 486 (emphasis added). Thus, in instructing the jury that they must find that the Michaels "willfully and knowingly" caused the statement to be filed, the district court made clear that conviction on this count, as with all counts, depended upon a finding that the defendants acted with the requisite mens rea -- here, a belief in the falsity of their returns.

In addition, the evidence presented at trial pervasively established that the Michaels not only believed that their tax returns were false, but actually knew that this was so. The evidence clearly demonstrated that both Michaels knew of the gambling business-- as, in fact, did much of the extended Michaels family -- and knew as well that they did not report the income from that business on their returns. Accordingly, because we conclude that, when taken "in the context of the instructions as a whole and [the] trial record," Mazzell, 88 F.3d at 267, the district court's instructions were not erroneous, we affirm the convictions of John and Sylvia Michael for filing false tax returns in violation of 26 U.S.C. § 7601.

12

IV.

Appellant John Michael next contends that his sentence of eighty-seven months should be vacated because the district court improperly applied a four-level role adjustment to the base level sentence for money laundering after grouping the gambling and money laundering counts. Michael was convicted of conducting an illegal gambling business, conspiracy to conduct an illegal gambling business, conspiracy to commit money laundering, seven substantive acts of money laundering, and filing false income tax returns. The district court "grouped" all of the counts pursuant to U.S.S.G. § 3D1.2. In accordance with the Guidelines, Michael's sentence was determined with reference to the highest individual adjusted offense level, which was for money laundering. Based on the amount of money laundered, this adjusted offense level was determined to be 25. The district court then applied a four-level enhancement for leadership in the organization pursuant to U.S.S.G. § 3B1.1(a) and arrived at a sentencing range based on an offense level of 29.

Michael argues that the guidelines require the application of a role adjustment to individual offenses before grouping, and that, regardless of how we resolve the grouping issue, an adjustment to the money laundering sentence based on his leadership role in the gambling offenses was improper because the latter was not conduct relevant to the former. We disagree on both counts.

First, as the district court correctly noted at sentencing, the law in this circuit is clear that a role in the offense adjustment is applied after related offenses are grouped. See United States v. Hartzog, 983 F.2d 604, 608 (4th Cir. 1993) ("The managerial enhancement does not apply to the sentence imposed on individual counts. Rather, it is applied to determine the applicable sentencing range for the grouped offenses collectively."). Thus, to the extent that offenses are legitimately grouped -- and Mr. Michael does not argue that in his case they are not -- the role adjustment is properly applied after grouping has occurred.

Second, even if appellant were correct that the adjustment must be applied first, and then only to those offenses of conviction with respect to which his gambling-related leadership is "relevant con-

13

duct," we would still affirm the four-level enhancement. The gambling offenses are relevant conduct under the Sentencing Guidelines because they occurred during "the commission of, and in preparation for," the money laundering. U.S.S.G. § 1B1.3(a)(1). Without the illegal gambling, there would have been no ill-gotten gains to launder. See United States v. Savage, 67 F.3d 1435, 1442 (9th Cir. 1995) (affirming four-level adjustment on sentence for money laundering on the basis of defendant's leadership role in underlying mail and wire fraud convictions). In addition, the gambling business is relevant conduct under § 1B1.3(a)(2) because the money laundering counts themselves were grouped based on the amount of money laundered under U.S.S.G. § 3D1.2(d), and the gambling organization was part of the "same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Thus, even if grouping of the money laundering and gambling counts were improper, or if a role adjustment were only to be applied prior to grouping, the four-level enhancement to the money-laundering sentence on the basis of a leadership role in the gambling offenses would be appropriate under the Guidelines. Accordingly, we affirm Mr. Michael's sentence.

V.

We have carefully reviewed and considered all other challenges appellants raise to their convictions and sentences, and find them to be without merit.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

14